**People of the State of Illinois, Defendant in Error, v. Robert Ellis, Plaintiff in Error.**

**Gen. No. 50,933.**

First District, Fourth Division.

June 30, 1967.

Rehearing denied August 18, 1967.

James N. Kosmond, of Chicago, for plaintiff in error.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Carmen Speranza, Assistant State's Attorneys, of counsel), for defendant in error.

MR. JUSTICE DRUCKER delivered the opinion of the court.

After a jury trial the defendant, Robert Ellis, was convicted of burglary and robbery and received a sentence for each crime of not less than five nor more than ten years in the penitentiary. The sentences were to run concurrently. Defendant filed a writ of error in the

Supreme Court and the case was transferred to this court.

## Contentions on Appeal

1. Defendant did not receive a fair trial because:

 (a) Defendant's written motion to suppress a revolver was erroneously denied;

 (b) The jury was erroneously instructed on the defense of alibi;

 (c) Cross-examination of the defendant by the prosecution was improper and prejudicial; and

 (d) A scarf was erroneously introduced into evidence.

2. Defendant was not proven guilty beyond a reasonable doubt.

## Facts

Defendant was indicted and tried for burglarizing the ground floor apartment at 1016 North La Salle Street in Chicago, Illinois. During the course of the burglary defendant allegedly, with force, took a gun from the hand of Dr. Delphine Bartosik (one of the occupants of the apartment), wherefore he was indicted and tried at the same trial for robbery. The apartment in question was leased by four female doctors, only two of whom (Dr. Bartosik and Dr. Margaret O'Neal) were present therein at the time of the crimes.

Dr. Bartosik testified that on September 14, 1962, at approximately 6:30 a. m. she was awakened by a noise and discovered the defendant standing three or four feet from her bed and holding a knife in his hand. Defendant wore a dark mesh-like material over his head. However, a lamp had remained turned on during the night and therefore, despite the face covering, Dr. Bartosik "was able to distinguish his features quite well." Defendant warned her not to scream, directed her to lie on her

stomach, and then tied her hands, placed a gag in her mouth and placed a pillow case on her head.

Defendant then proceeded into the kitchen, where he made noises which awakened Dr. O'Neal. The latter sat up in bed and turned on her light. She described the burglar, who then entered her room, as being approximately five feet six inches tall and thin; he had a knife in his hand and a thin material over his face which did not distort his features. He was in her room only momentarily and Dr. O'Neal could not identify him.

In the meantime, Dr. Bartosik worked free of her bonds, grabbed a pistol (which her father had given her) from underneath the bed and pointed it at defendant as he again entered her room. A struggle for the gun ensued, it discharged and was subsequently taken from her by defendant. Dr. Bartosik later noticed that defendant apparently gained entry to the apartment through a sliding glass door which faces La Salle Street.

Eight days after the incident, on September 22, Dr. Bartosik positively identified the defendant from a lineup of five men at the police station. She also identified a sheer black scarf (People's Exhibit 1), which had allegedly been discarded by defendant just prior to his arrest, as being very much like that worn by the burglar. Additionally, Dr. Bartosik identified her gun, which had been taken by defendant and discarded by him just prior to his apprehension. The gun had various distinctive features which corroborated her identification.

Glennis Willis, a newspaper delivery boy, testified that he observed the defendant at approximately 6:30 a. m. on September 14 sitting on the steps of the building in which Dr. Bartosik lived and that subsequently he saw defendant looking into the apartment which he was accused of burglarizing. While Willis described the man as heavy set, he estimated the man's weight at 140 to 150 pounds.

Defendant was arrested in the early morning hours of September 22, 1962, after a chase which began when the police spotted him sitting with two other persons in a car which was parked in a dark alley.[1] Shortly before the culmination of the chase defendant discarded a gun, which he had been carrying in his hand, into a garbage can. The gun was recovered immediately thereafter by one of the pursuing police officers. When confronted with the gun defendant denied ever possessing it. Defendant also discarded an object which landed on the bumper of an abandoned automobile. Approximately thirty-five minutes after defendant's capture, one of the police officers who had pursued him and observed defendant discard that object, returned to the scene and found a black scarf (People's Exhibit 1) on the car bumper.

At the trial defendant testified and denied burglarizing the apartment in question. He offered the alibi that at 6:30 a. m. on the day in question he was at the home of Mr. and Mrs. Jones on North Larrabee Street in Chicago, Illinois, where he resided. He testified that he was awakened by Mrs. Jones at approximately 6:30 a. m., left at about 7:00 a. m. and went to the home of his aunt where he arrived between 7:45 and 8:00 a. m. Defendant's aunt and Mrs. Jones corroborated the defendant's alibi testimony.

### Opinion

■ Defendant contends that he did not receive a fair trial.

(a) In support thereof defendant first argues that his motion to suppress the revolver which he allegedly discarded into a garbage can was erroneously denied.

---

[1] There is no indication that the other two persons were implicated in any criminal behavior. They disappeared while defendant was being chased by the police.

With regard to that motion the Supreme Court, in its transfer order, stated:

> The record shows that the defendant threw the gun in a trash can while he was being pursued by the police. There is no substantial question of an unlawful search and seizure in this case.

Therefore, we find that the trial court was correct in denying defendant's motion to suppress the revolver.

██ (b) Defendant next argues that the jury was given an erroneous and prejudicial alibi instruction. That instruction was as follows:

> The Court instructs the jury, as a matter of law, that before a defendant can avail himself of the defense of an alibi, the proof must cover the whole of the time of the commission of the crime and be supported by such facts and circumstances in evidence as are sufficient (when considered in connection with all the other evidence in the case) to create in the minds of the jury a reasonable doubt of the truth of the charge or charges against the defendant.

We believe that any impropriety in that instruction was cured by the giving of the following instruction:

> If a person on trial for a crime shows that he was in another place at the time when the act was committed, he is said to prove an alibi. Such defense is proper and all evidence bearing on that point should be carefully considered by the jury. If in view of all the evidence, the jury believe the defendant was in some other place other than where the crime was committed at the time the crime was committed, or if the jury have a reasonable doubt of his presence when and where the crime was committed, they should give the defendant the benefit of the doubt, and find him not guilty.

As regards the defense of the alibi, the jurors are instructed that the defendant is not required to prove that defense beyond a reasonable doubt to entitle him to an acquittal. It is sufficient, if the defense upon that point raises a reasonable doubt of his presence at the time and place of the commission of the crime charged, and if it does, it is your sworn duty under the law to give the benefit of the doubt to the defendant and to find him not guilty.

It is of no relevant significance that the instruction objected to was given to the jury subsequent to the curative instruction since the jury was also instructed that the instructions "should be considered together as one entire series, and each instruction should be considered in connection with all instructions bearing upon the same subject." Therefore, we find no merit in defendant's argument.

█ (c) Defendant also argues that testimony elicited from him on cross-examination, over objection, that he had previously been in the penitentiary was prejudicial error.

After an examination of the record, it appears that the prosecution did not intentionally attempt to elicit from defendant the fact that he had a criminal record. On direct examination, defendant testified that he was with a person named Chris just prior to his arrest, in the car which the police discovered in an alley. On cross-examination, the prosecution attempted to discover the identity of Chris and his relationship to the defendant. The prosecutor asked defendant where he knew Chris from, and defendant replied: "I know him from the penitentiary." Defense counsel did not ask the remark to be stricken, but moved only for a mistrial. (The motion was denied.) Subsequently, the prosecution introduced the defendant's criminal record into evidence. There is no evidence apparent from the record on appeal that the prosecutor was aware that defendant knew Chris from

the penitentiary. Defendant opened the door for cross-examination as to the identity of Chris and their relationship by his direct testimony that he was innocently sitting in a car with Chris and another man in a dark alley in the middle of the night.

Moreover, since the defendant's criminal record was formally introduced into evidence, any error which may have been committed was cured. People v. Squires, 27 Ill2d 518, 190 NE2d 361. In People v. Smith, 63 Ill App2d 369, 381–382, 211 NE2d 456, the court stated:

> . . . Our Supreme Court formerly held that the effect of the defendant disclosing from his own lips the fact of his prior convictions was so damaging that the only manner in which a prior conviction could properly be established was by the record or an authenticated copy of the conviction. Under this view, if the defendant were also examined regarding his prior conviction, it would be reversible error.
>
> Recently, however, our Supreme Court has modified this view and has held that the cross-examination of a defendant as to a prior conviction is not reversible error if the record is also admitted as proof of the conviction.
>
> . . . . . .
>
> While the manner of proving the prior conviction of the defendant in this case did not constitute error, we are not condoning the practice of examining a defendant as to such convictions any more than we believe the Supreme Court in Squires or Neukom [referring to People v. Squires, supra, and People v. Neukom, 16 Ill2d 340] was indicating its approval of such practice. We merely hold that in the case at bar, it was not error. It is conceivable that the examination of a defendant as to his prior conviction, in extremely close cases or in those in which the

94

nature of the offense elicited is revolting or heinous, may result in more than merely discrediting his testimony, and that the examination in such cases may constitute prejudicial error and grounds for reversal. In such event, the error could not be cured by subsequently proving the conviction in the proper manner.

We therefore find that no prejudicial error was committed in the instant case by allowing the cross-examination in question.

■■■ (d) Defendant also argues that People's Exhibit 1, a black scarf which he allegedly discarded while being pursued by the police, was erroneously admitted into evidence. Dr. Bartosik and Dr. O'Neal both testified that the scarf resembled that worn by the intruder over his face. Defendant appears to assert that the lapse of time prior to the recovery of the scarf gave rise to some intervening agency, wholly unassociated with defendant, by which the scarf may have come to rest on the automobile where it was found by the police. A police officer testified that he saw defendant discard an object which landed on the bumper of an abandoned automobile; that he recovered that object, a black scarf, some thirty to forty-five minutes later from the bumper of that same automobile. In urging that the scarf was erroneously admitted into evidence defendant relies on People v. Reno, 324 Ill 484, 155 NE 329. In that case a bullet was found at least twelve hours after a murder by a witness who had previously inspected the room and found nothing. The court decided it was error to admit the bullet, stating at page 487:

> There is no evidence as to how long the bullet had been there or that it was in any way connected with Reno or the murder. To render this bullet competent as evidence it should have been connected in some

way with Reno or shown to have had some connection with the killing of deceased or her husband.

In the instant case, the scarf was connected to the defendant and we find no error in its admission into evidence.

■ ■ 2. In contending that he was not proven guilty beyond a reasonable doubt, defendant argues that the identifications of him by Glennis Willis and Dr. Bartosik were not credible. However, we find no merit in defendant's contention. Dr. Bartosik was twice confronted by the defendant in close quarters; a light was turned on in her bedroom; and the intruder's features were discernible through the thin facial covering worn by him. Furthermore, Dr. Bartosik positively identified the defendant from a lineup of five men and again identified him at trial. Additionally, Dr. Bartosik identified the gun taken from her as the same one discarded by defendant prior to his arrest and she also identified the scarf discarded by defendant as being similar to that worn by the intruder. Glennis Willis, who identified the defendant at the police station and again at trial as the man he saw peering into the apartment, looked directly at the man while the latter sat on the steps in front of the apartment. The conflict in the identification testimony of Willis and Dr. Bartosik was that the latter testified the intruder was wearing a grayish-green or olive-green type of sweater jacket, while Willis testified that the man he observed peering into the apartment was wearing a blue jacket. We would point out that the observations were not made under the same lighting conditions, as one was made inside the house and the other outdoors. Both testified that the intruder wore dark pants; Dr. Bartosik testified that the intruder was five feet five to seven inches tall and slender and, while Willis described the man he saw as heavy set, he estimated the man's weight at 140 to 150 pounds. While

the identification by Willis was not made from a lineup, this fact affects only the weight and not the competency of the identification. People v. Napper, 78 Ill App2d 451, 223 NE2d 194. In that case an identification of an alleged rapist by the victim was held to be competent even though it was made as he lay in a hospital, and immediately prior to the identification in that case the victim was informed that they had the man who attacked her.

In People v. Donald, 29 Ill2d 283, 286–287, 194 NE2d 227, the Supreme Court stated:

> In weighing evidence of identification, the attendant circumstances, along with the probability or improbability of an adequate opportunity for a definite identification, must be considered . . . . However, the positive identification by one witness who had ample opportunity for observation may be sufficient to support a conviction even though such testimony is contradicted by the accused . . . . Although there was proof of alibi, in the last analysis this became a question of the witness' credibility which was for the jury to decide, and such determination not being so unreasonable, improbable, or unsatisfactory as to raise a reasonable doubt of the defendant's guilt, the verdict will not be disturbed on review.

In the instant case, we find that the identification of defendant was sufficient to support a conviction.

**Holding on Appeal**

We find that the defendant received a fair trial and that he was proven guilty beyond a reasonable doubt. Therefore the judgment of the trial court is affirmed.

Affirmed.

ENGLISH, P. J. and McCORMICK, J., concur.