**People of the State of Illinois, Plaintiff-Appellee, v. Cornelius Prince Skinner, Defendant-Appellant.**

Gen. No. 52,904.

First District, Fourth Division.

December 11, 1968.

Harry B. Madsen, of Chicago, for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James R. Truschke, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE DRUCKER delivered the opinion of the court.

This appeal [1] is from a judgment after a bench trial in which defendant was found guilty of armed robbery. He received a sentence of five to twenty years in the penitentiary.

---

[1] This appeal was initially filed in the Supreme Court and was transferred to this court.

CONTENTIONS ON APPEAL

1. There was a fatal variance between the indictment and the proof.

2. Prejudicial evidence concerning the defendant's past record was injected by the prosecution and prevented a fair trial.

3. Oral statements of defendant were improperly admitted into evidence.

4. Defendant was not proven guilty beyond a reasonable doubt.

EVIDENCE

*Testimony of William Ridley, for the State*

He is the clerk at the Crest Hotel and was on duty during the early morning of April 1, 1962. Three armed men came into the hotel that morning and took $22 in cash from him, took his wallet and $116 from the hotel's cash drawer. He slipped away from the robbers and locked himself in a room. Shortly after he came out of the room the police arrived. He went out to a police car and identified the man who was sitting inside as one of the robbers. That man was Willie Craft.[2] He was then taken to the police station and picked Craft and defendant out of a lineup. There was one other man in the lineup and the witness had a close look at him before deciding that he was not one of the robbers. He asked the defendant where his wallet was. Defendant told him: "Where the police picked me up"; and the police supplied the precise address. In the police station he heard Craft, in the presence of the defendant, say that he (Craft) owned the two guns and that he had given one to the defendant.

*Testimony of Charles Dalton, for the State*

He is the manager of the Crest Hotel and lives in an apartment in the hotel which has its front door opening

---

[2] Willie Craft was a co-defendant in this case and pleaded guilty.

directly on the lobby. He observed the robbery from his door and was able to see the face of only one of the robbers; he could see the face of Willie Craft. Another of the men was dressed in a beige raincoat and cap; he saw that man later at the station and it was the defendant. He never saw the defendant's face during the robbery. He called the police from a private phone in his apartment.

*Testimony of William Moser, for the State*

He is a police officer from the 12th District. Early in the morning of April 1, 1962, he received a call reporting a robbery and as he got to the scene of the robbery he saw three men running from the Crest Hotel. The three men split up and he chased one into an alley and captured him as he tried to climb a fence. The man he apprehended was Willie Craft.

He took Craft to the station where Craft was placed in a four man lineup. William Ridley picked Craft and the defendant out of the lineup; Ridley also took a close look at one other man in the lineup.

*Testimony of Biaggio Panepinto, for the State*

He is a police officer who went to the Crest Hotel the morning of the robbery. When he and his partner arrived at the scene they chased two men into an alley near the hotel. The two men split up near the back of the alley and he chased one of them into a yard. His partner lost the other man and returned very shortly to help search the yard. In the yard they found the defendant hiding under a porch; further search revealed a Derringer pistol hidden in a woodpile a few feet from where the defendant was found. At that time the defendant denied complicity in the robbery and denied ownership of the pistol. They then took defendant to the police station where he was questioned by a detective; Craft was questioned at the same time. At that time Craft said that he owned the Derringer and another weapon (a .45) and that

204

he had lent the Derringer to defendant. Defendant then said: "I was the other fellow who had the Derringer." The defendant was then placed in a lineup with Craft; they were the only two in it, and Mr. Ridley identified them both.

*Testimony of Willie Craft, for the defense*

He robbed the Crest Hotel early in the morning of April 1, 1962, with two other men: Killer and James Jack. Jack had a .25 automatic, he had a .45, and he let Killer use a Dunchen .22. (Witness identified People's Exhibit 1 as the gun which he let Killer use.) Jack had on a gray overcoat and a blue suit; Killer had on a khaki trench coat and a brown corduroy cap.

After the robbery they all ran out of the hotel and he ran in a different direction from Jack and Killer. He ran into an alley a few feet from the hotel entrance which turned out to be dead end and he was captured there. He was taken to the police station and did not see either Jack or Killer there. He was put into a lineup with two men whom he had never seen before; one of them was the defendant. Ridley identified him immediately. Ridley also identified another man (not defendant) saying, "I don't know, because I don't want to cause an innocent man trouble . . . . He looks like the one because he is the one that had on the gray trench coat." Ridley then identified defendant.

He never told the police that defendant and he had planned the robbery. He never told the police that defendant was involved in the robbery at all. The police then took him upstairs and threatened to beat him; then he told them that defendant was one of the holdup men.

*Testimony of Cornelius Prince Skinner, the defendant*

Early in the morning of April 1, 1962, he was walking west on Jackson Boulevard on the north side of the street. As he was walking along a fellow came running out of an alley and said that he had thrown a pistol and wallet up

205

the alley. He said that defendant could have it if defendant got it; he also said that the police were chasing him. The fellow had on a white trench coat and a white hat; defendant had on a beige raincoat and a brown corduroy hat.

Defendant didn't see anybody coming so he walked up the alley to look for the gun and wallet. When he got to the back of the alley he saw the police coming; he went through a gate and hid under the steps. He did not find the gun. The police found the gun very near to where he had been hiding. He never admitted to them or to anyone else that he had been in on the robbery. Defendant told Mr. Ridley where he could find his wallet because defendant assumed that Ridley's was the wallet that the fellow who came running out of the alley was talking about.

That morning defendant was on his way home by way of his mother's. He lives at 2159 West Madison, his mother lives on Monroe and Wood, he was coming from Halsted and Washington. He was walking on Jackson, which is out of his way, because it is a lit street and he knows the neighborhood. The fellow who came out of the alley was running very slowly; he told defendant that he had thrown the gun and wallet over the fence and pointed back toward the yard.

OPINION

The defendant argues that since the indictment charges that the defendant took $138 from the person and presence of William Ridley and since Ridley testified that only $22 of the money belonged to him, there is a fatal variance between the indictment and the proof because the indictment did not name any other victim (thus leaving $116 unaccounted for).

■■■■■ The relevant statute defines robbery as the taking of "property from the person or presence of another by the use of force or by threatening the imminent use of force." Ill Rev Stats 1967, c 38, § 18–1. The gist

of the offense is the taking; the ownership of the property taken is unimportant; its possession by the victim is adequate for the purpose of establishing the crime of robbery. People v. Renallo, 410 Ill 372, 101 NE2d 116; People v. Steenbergen, 31 Ill2d 615, 203 NE2d 404; People v. Smith, 90 Ill App2d 388, 234 NE2d 161. In the instant case $138 was taken from the person and possession of Ridley. There is no variance between the indictment and the proof.

Defendant urges that he was prejudiced by the prosecutor's reference to his prior criminal record. However, the existence of defendant's prior criminal record was first made known to the court by defendant himself during cross-examination:

> Q. When the police came up, didn't you tell them about this fellow that ran by and threw this?
> A. They didn't ask questions. Told me to come out.
> Q. What were you hiding for? You hadn't done anything, had you?
> A. Well, see, sir, I has a record and indicating that gun, I am looking for the gun, they figured I am up to something wrong.
> Q. Well, despite the fact you had a record, you still went looking for the gun?
> A. Yes.

██ ██ It is clear that it was the defendant who injected his prior criminal record into the proceedings and that his statements were not in response to a question designed to elicit that information. The question which drew the response followed logically along the pattern of cross-examination which was attempting to break down Skinner's explanation of what he was doing in the yard in which Ridley's wallet and the gun were found. Defendant's own reference to his criminal record did not constitute prejudicial error. People v. Musinski, 22 Ill2d 518, 520, 177 NE2d 142; People v. Ellis, 85 Ill App2d 87, 229 NE2d 395.

■ ■ Defendant next argues that all evidence concerning his oral statements to police officers should be excluded since defendant was not apprised of his constitutional rights. However, defendant counsel's failure at the trial to object specifically to the admission of this evidence on this ground [3] and to move for the suppression of the evidence bars raising the point on appeal. People v. McMath, 40 Ill2d 388, 240 NE2d 593. Furthermore, since the instant trial occurred in 1962, the decision in 1966 in Miranda v. Arizona, 384 US 436, requiring that an accused be apprised of his constitutional rights is inapplicable. Miranda is not retroactive. Johnson v. New Jersey, 384 US 719.

■ ˙Defendant also claims he was not proven guilty beyond a reasonable doubt. Where a cause is tried without a jury the law commits to the trial judge the determination of the credibility of the witnesses and the weight to be given to their testimony and unless the evidence is so improbable or unsatisfactory as to leave a reasonable doubt of defendant's guilt, the finding of the court will not be disturbed. People v. Reaves, 24 Ill2d 380, 382, 183 NE2d 169; People v. Moore, 76 Ill App2d 326, 332, 222 NE2d 95.

In finding defendant guilty the court commented on the evidence and in part stated:

> I don't recall ever hearing a witness in this court that spoke with such conviction and sincerity as Mr. Ridley.
>
> ˙ ˙ ˙ ˙ ˙
>
> So, I just don't believe Skinner at all. And I don't believe Willie Craft when he said that Skinner was not in this robbery.

---

[3] Counsel for defendant did object to the admission of the oral statements on the ground that he had not been advised that there were oral statements. However, the record shows that defendant was so notified.

From this record we find defendant was proven guilty beyond a reasonable doubt.

The judgment of the Circuit Court is affirmed.

Affirmed.

McCORMICK, P. J. and ENGLISH, J., concur.