**People of the State of Illinois, Plaintiff-Appellee, v. Robert Wooley, Defendant-Appellant.**

**Gen. No. 53,831.**

First District, Fourth Division.

July 8, 1970.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Herbert Becker, Norman W. Fishman and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Arthur Belkind, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE LEIGHTON delivered the opinion of the court.

Defendant and a Lawrence Martin were jointly indicted for armed robbery. In a separate jury trial, defendant was convicted. After overruling oral post-trial motions and conducting a hearing in aggravation and mitigation, the court sentenced him to serve not less than eight nor more than fifteen years.

From the relevant and material evidence it appears that on June 12, 1969, at about 2:20 p. m., Milton Goldman and his partner, Ervin Wise, were in their store at 5117 Ingleside Avenue, Chicago. With them were Goldman's father-in-law, Sidney Miller, a stock boy and three customers. Goldman heard Miller say, "Oh my gosh, they're back again." Looking up, Goldman saw two men in the store. They were unmasked; neither made any attempt to hide his identity. One man had a shotgun. He threatened Miller and ordered Goldman to the back, behind a meat case. He demanded of Goldman, "Where is the money?" Goldman told the man that money was in the cash register. The man compelled Goldman to turn around, searched him and took his wallet which contained between $15 and $20. The man returned the wallet to Goldman.

The two men were in the store a period of about twenty mintues. During the entire time, the man with the shotgun was in Goldman's presence. With the exception of the few minutes when he was turned around while his wallet was taken, Goldman looked at the man with the shotgun. There was conversation between them, with Goldman looking at the gunman's face, observing the man's dress, his appearance and his general demeanor. During this time the gunman's companion went through the cash register and "cleaned out everything," a sum of about $225. Sidney Miller saw both men and had the opportunity to observe them when they entered the store and as they left.

Soon after that, Goldman called the police. They arrived. He and Sidney Miller gave them a description

251

of the two men. That evening and the next day, Goldman went to the police station where he "looked at hundreds . . . of photographs." He was not able to recognize anyone. Thereafter, two or three times each week for the next month, police officers came to Goldman's store with photographs, some sixty or seventy in all. He was not able to recognize the robbers from any of these. July 13 or 14 two police officers brought Goldman three photographs. They told him to look at them carefully. Goldman did and then picked out one that was defendant's picture.

On July 17, 1969, at about 11:00 a. m., while defendant was in an elevator at 1121 South State Street, he was arrested by Chicago policemen. After being warned of his constitutional rights, defendant gave the police information concerning Lawrence Martin, his part in the robbery and the whereabouts of guns that were hidden in two buildings. Martin was arrested; the guns were found, including a shotgun introduced in evidence as the weapon used in the robbery.

Sometime during July 17, Goldman received a telephone call to come to the police station. At about 8:00 p. m. he and Ervin Wise went to the station. Goldman entered a room in which there were between six to eight young Negro males between the ages of 16 and 20. "I spotted this fellow as I walked in before I talked to anybody." A police officer in charge told the men to line up against a wall. Goldman picked out two men: defendant, as the man with the shotgun during the robbery, and Lawrence Martin, as the accomplice.

From these facts, defendant makes two contentions: 1. The identification procedure used by the police was improper; therefore, the trial judge erred in admitting the identifying testimony of the complaining witness, Milton Goldman. 2. The conviction must be reversed because allegations concerning the property taken from the complaining witness were not proved.

Defendant's first contention was raised by a pretrial motion to suppress the identification testimony of Milton Goldman. After hearing evidence, the trial judge refused to suppress the testimony. This ruling, defendant contends, was error. In support of this contention, he makes three arguments.

First, that it was improper to show Milton Goldman photographs which made it possible for him to identify in court, not defendant, but the person whose picture he selected from the many furnished him by the police. Defendant urges condemnation of any identification procedure which utilizes photographs, even though prior to arrest.

██ This argument, and a number of its variants, have been rejected many times by the courts of this state. We rejected one version of it in People v. Williams, 104 Ill App2d 329, 244 NE2d 347; and the Supreme Court rejected an aspect of the same contention in People v. Pride, 16 Ill2d 82, 156 NE2d 551. In Simmons v. United States, 390 US 377, 384, 88 S Ct 967, 19 L Ed2d 1247 (1968), Mr. Justice Harlan, for the court, said:

> Despite the hazards of initial identification by photograph, this procedure has been used widely and effectively in criminal law enforcement, from the standpoint both of apprehending offenders and of sparing innocent suspects the ignominy of arrests by allowing eye witnesses to exonerate them through scrutiny of photographs. The danger that use of the technique may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error. We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead,

we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.

■ The record before us does not disclose that Goldman's use of the photographs furnished him by the police caused a very substantial likelihood of defendant's irreparable misidentification.

Second, defendant argues that when Goldman was called to come to the police station on July 17, 1969, he was told that "[t]here is a good possibility that they may have the fellow that held us up." Goldman told the jury that a policeman told him "[t]hey think they got one of the fellows that held us up. . . ." The point defendant makes is that these statements were suggestive and they tainted the lineup identification procedure that was used in the police station.

■ This argument was made to us in People v. Marshall, 74 Ill App2d 472, 221 NE2d 128 and in People v. Chambers, 112 Ill App2d 347, 251 NE2d 362, the latter a case quite similar on its facts to the one at bar. In People v. McIntosh, 82 Ill App2d 90, 94, 227 NE2d 76, we said, "Any time a victim of a crime is asked to come to a police station to look over persons arrested, there is an unavoidable intimation that the police have arrested someone who they believe might be the perpetrator of the crime." This, we think, is the kind of common sense that must always guide us when we apply rules of evidence and constitutional principles to the administration of criminal justice. The police in this case did no more than was done in McIntosh.

■ Third, defendant argues that Detective Fred Miller was allowed to testify that Milton Goldman identified defendant from the lineup in the police station. The point made is that this testimony was prejudicial hearsay.

Overlooking the fact that no objection was interposed by defendant, we observe that this testimony was given when defendant's motion to suppress was heard. It was not repeated to the jury. Before Detective Miller's testimony, Milton Goldman had testified that he identified defendant from the lineup. At most, therefore, Miller's testimony about the lineup identification did not inject new evidence into the hearing; it merely repeated what already had been proved by competent evidence. Under these circumstances, admission of this evidence was not prejudicial. People v. Frenchwood, 28 Ill2d 139, 190 NE 2d 767; People v. James, 109 Ill App2d 328, 248 NE2d 777; People v. Campbell, 113 Ill App2d 242, 252 NE2d 26. For these reasons, we conclude that the trial court ruled correctly when it denied defendant's motion to suppress Milton Goldman's identification testimony.

Defendant bases his second contention on the fact that the indictment alleged defendant and Martin robbed Goldman of a wallet and $183 but the evidence proved the money belonged to the partnership of Milton Goldman and Ervin Wise. Thus, the argument goes, the prosecution failed to prove a material allegation of the charge.

■ ■ The gist of a prosecution for robbery is that the accused forcibly took property that was in the care, custody or control of another person. Proof of actual ownership is unnecessary, where possession by the victim is shown. People v. Steenbergen, 31 Ill2d 615, 619, 203 NE2d 404; People v. Carpenter, 71 Ill App2d 137, 217 NE2d 337. In the case before us the evidence proved that defendant with a shotgun, aided by Martin his ac-

complice, took Goldman's wallet from him, extracted money from it and then cleaned out a cash register in Goldman's presence. This was armed robbery, even though evidence concerning the property taken may have varied from the allegations in the indictment. People v. Skinner, 103 Ill App2d 201, 243 NE2d 509. The judgment is affirmed.

Judgment affirmed.

DRUCKER and ENGLISH, JJ., concur.