# Richmond

MACON GLENN DREWRY v. COMMONWEALTH OF VIRGINIA.

September 1, 1972.

Record No. 7946.

Present, Snead, C.J., I'Anson, Carrico, Harrison, Cochran and Harman, JJ.

*Russell P. Robertson* (*Atkinson, Robertson & Wheeler,* on brief), for plaintiff in error.

*Burnett Miller, III, Assistant Attorney General* (*Andrew P. Miller, Attorney General,* on brief), for defendant in error.

CARRICO, J., delivered the opinion of the court.

The defendant, Macon Glenn Drewry, was convicted by the trial court, sitting without a jury, of attempted armed robbery and was sentenced to serve three years in the penitentiary. We granted him a writ of error.

The crucial question for decision is whether the defendant's Sixth Amendment rights were violated when the trial court admitted evidence of an out-of-court photographic identification of the de-

fendant made after arrest and appointment of counsel, but in the absence of counsel.

The evidence shows that on September 29, 1970, Harry S. Pullen alighted from his automobile at his home and was accosted by a masked, armed man. Pullen drew his own gun and disarmed the would-be robber. The assailant then removed his mask and begged Pullen not to shoot him. When Pullen attempted to take the gunman into his home, where he intended to call the police, the man broke away and ran. Pullen reported the incident to the police and gave them a detailed description of his assailant.

On November 30, 1970, Officer Davis of the Newport News Police Department, who was acting as an undercover narcotics agent, encountered the defendant in a restaurant and engaged him in conversation about drugs. The defendant told Davis that in order to obtain money to buy drugs, he had perpetrated a number of robberies. He gave a detailed account of the incident involving Pullen. Davis reported this information to his superior officer, and on December 22, 1970, the defendant was arrested on a warrant charging him with the attempted robbery of Pullen. Counsel was appointed for the defendant on December 23 by the judge of the municipal court.

On December 26, 1970, two police officers, without notifying the defendant's counsel, took a group of six photographs, including one of the defendant, to Pullen's home. Pullen picked out the defendant's photograph, which had been taken about a year earlier, and identified it as representing the person who had attempted to rob him.

About three weeks later, a lineup was held at the request of the defendant's counsel. At that time, the defendant had changed greatly in appearance from the way he had looked on the date of the attempted robbery. He had lost weight, had become very pale, had shaved his head, and had removed his mustache. He was placed in the lineup with five other persons. Included in the group was his brother whose appearance then resembled that of the defendant at the time of the attempted robbery. Pullen viewed the lineup and identified the brother as his assailant.

At trial, Pullen was not asked whether he could identify the defendant. However, evidence was admitted, over the objection of the defendant, of Pullen's photographic identification of the defendant on December 26, 1970. This, the defendant contends, was error.

Relying upon *United States* v. *Wade*, 388 U.S. 218 (1967), the defendant argues that the photographic identification in the absence of and without notification to his counsel violated his Sixth Amendment rights. In *Wade*, the Supreme Court held that a lineup is a critical stage of the prosecution at which presence of counsel is required, if not intelligently waived. The defendant contends that since Pullen did not identify him at the lineup or at trial, the photographic identification was, as to him, a critical stage of the prosecution, and his counsel should have been present.

*Wade*, as has been noted, involved a lineup, and not a photographic identification. However, the question whether the decision might apply to photographic identifications was raised by the court's observation that "the principle of *Powell* v. *Alabama* and succeeding cases requires that we scrutinize *any* pretrial confrontation of the accused to determine whether the presence of his counsel is necessary." 388 U.S. at 227.

Since the holding in *Wade*, there has been a flood of decisions in both federal and state courts in which the applicability of the holding to photographic identifications has been considered. The overwhelming majority of those decisions is against the applicability of the *Wade* rule to out-of-court photographic identifications.

Of the eleven federal circuits, ten have considered the question. Nine have held that the right to counsel does not attach to out-of-court photographic identifications. *United States* v. *Bennett*, 409 F.2d 888 (2d Cir.), *cert. denied sub nom., Haywood* v. *United States*, 396 U.S. 852, *reh. denied*, 396 U.S. 949 (1969); *United States ex rel. Reed* v. *Anderson*, 461 F.2d 739 (3d Cir. 1972); *United States* v. *Collins*, 416 F.2d 696 (4th Cir. 1969), *cert. denied*, 396 U.S. 1025 (1970); *United States* v. *Ballard*, 423 F.2d 127 (5th Cir. 1970); *United States* v. *Serio*, 440 F.2d 827 (6th Cir. 1971); *United States* v. *Robinson*, 406 F.2d 64 (7th Cir.), *cert. denied*, 395 U.S. 926 (1969); *United States* v. *Long*, 449 F.2d 288 (8th Cir. 1971); *United States* v. *Fowler*, 439 F.2d 133 (9th Cir. 1971); *United States* v. *Maxwell*, 456 F.2d 1053 (10th Cir. 1972).

Only one federal circuit now holds to the contrary. On March 1, 1972, the District of Columbia Circuit, in *United States* v. *Ash*, 461 F.2d 92, held that, with certain exceptions, counsel is required in photographic identifications. Noting that its holding was contrary to the majority view, the court chose to follow and relied heavily upon the Third Circuit's earlier decision in *United States* v. *Zeiler*,

427 F.2d 1305 (1970), which had been the lone federal circuit case requiring counsel in photographic identifications. However, on April 11, 1972, the Third Circuit specifically overruled *Zeiler* in *United States ex rel. Reed* v. *Anderson, supra.*

The trend toward the view that *Wade* is inapplicable to photographic identifications is also present in state decisions. *See, e.g., People* v. *Lawrence,* 4 Cal.3d 273, 481 P.2d 212, 93 Cal. Rptr. 204 (1971); *Reed* v. *State,* 281 A.2d 142 (Del. 1971); *People* v. *Martin,* 47 Ill.2d 331, 265 N.E.2d 685 (1970); *Crenshaw* v. *State,* 13 Md. App. 361, 283 A.2d 423 (1971). *Contra, Thompson* v. *State,* 451 P.2d 704 (Nev.), *cert. denied,* 396 U.S. 893 (1969); *Commonwealth* v. *Whiting,* 439 Pa. 205, 266 A.2d 738, *cert. denied,* 400 U.S. 919 (1970).

We join in the view that counsel is not required at out-of-court photographic identifications. Not only is that the majority view, but it is also the one founded upon logic and reason, as exemplified by the language of Judge Friendly in *United States* v. *Bennett, supra,* which we adopt:

> "[T]o require that defense counsel be allowed or appointed to attend out-of-court proceedings where the defendant himself is not present would press the Sixth Amendment beyond any previous boundary. None of the classical analyses of the assistance to be given by counsel, Justice Sutherland's in Powell v. Alabama, 287 U.S. 45, 68-69, 53 S.Ct. 55, 77 L.Ed. 158 (1932), and Justice Black's in Johnson v. Zerbst, *supra,* 304 U.S. at 462-463, 58 S.Ct. 1019, and Gideon v. Wainwright, *supra,* 372 U.S. at 344-345, 83 S.Ct. 792, suggests that counsel must be present when the prosecution is interrogating witnesses in the defendant's absence even when, as here, the defendant is under arrest; counsel is rather to be provided to prevent the defendant himself from falling into traps devised by a lawyer on the other side and to see to it that all available defenses are proffered. Many other aspects of the prosecution's interviews with a victim or a witness to a crime afford just as much opportunity for undue suggestion as the display of photographs; so, too, do the defense's interviews, notably with alibi witnesses." 409 F.2d at 899-900.

This brings us to a subsidiary argument advanced by the defendant relative to his photographic identification. He says that

the identification was so overly suggestive as to deny him due process of law. Here, he recites the testimony of one of the police officers who presented the photographs to Pullen. The police officer testified that he went to the home of Pullen, handed him the photographs, and expressed the belief that the assailant was among those pictured.

The defendant relies upon *Simmons* v. *United States*, 390 U.S. 377 (1968), and specifically upon that portion of the opinion where the court stated that the "chance of misidentification [in photographic identification] is . . . heightened if the police indicate to the witness that they have other evidence that one of the persons pictured committed the crime." 390 U.S. at 383. From this, the defendant argues that evidence of his photographic identification should have been excluded. However, the Supreme Court did not, in *Simmons*, prohibit the use of photographic identifications. Instead, recognizing that the right of cross-examination may substantially lessen the chance of misidentification, the court held that each case must be judged upon its own facts. With these premises in view, the court further stated that it would set aside convictions based upon pretrial identification by photograph only if the identification procedure is "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." 390 U.S. at 384.

We are of opinion that the statement of the police officer to Pullen was not impermissibly suggestive. While it might have been better if the officer had not expressed his belief that Pullen's assailant was among those depicted in the photographs, the officer's statement did not amount to an indication that the police had "other evidence that one of the persons pictured committed the crime," the practice criticized in *Simmons*. Moreover, we think it only reasonable to say that the mere fact that the police officer wanted Pullen to view the pictures carried with it, necessarily and unavoidably, the implication that the officer believed the guilty party might be among those pictured. *People* v. *Wooley*, 127 Ill. App. 2d 249, 254, 262 N.E.2d 237, 239-40 (1970). So the officer's actual expression of his belief would have been, at most, harmless in its effect.

The final contention of the defendant is that the evidence was insufficient to sustain his conviction. We have examined the evidence and find that it was fully sufficient.

The judgment of the trial court will be affirmed.

*Affirmed.*