COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges Kelsey, McCullough and Senior Judge Clements
Argued at Chesapeake, Virginia

DAVID SMITH

v.      Record No. 2159-11-1

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE D. ARTHUR KELSEY
NOVEMBER 6, 2012

FROM THE CIRCUIT COURT OF THE CITY OF PORTSMOUTH
Johnny E. Morrison, Judge[1]

S. Jane Chittom (Office of the Capital Defender, on brief),
for appellant.

Steven A. Witmer, Senior Assistant Attorney General
(Kenneth T. Cuccinelli, II, Attorney General, on brief),
for appellee.


David Smith pled guilty to forcible sodomy and abduction with the intent to defile.  He

conditioned his plea upon preserving a right to appeal from the trial court's denial of his pretrial

motion, which sought to suppress the victim's identification of him in a photographic array.

Because the trial court did not err by denying Smith's motion, we affirm his convictions.


I.

When reviewing a denial of a suppression motion, we review the evidence "in the light

most favorable to the Commonwealth, giving it the benefit of any reasonable inferences."  Glenn

v. Commonwealth, 49 Va. App. 413, 416, 642 S.E.2d 282, 283 (2007) (*en banc*) (citation

omitted), aff'd, 275 Va. 123, 654 S.E.2d 910 (2008).  This standard requires us to "give due

weight to inferences drawn from those facts by resident judges and local law enforcement

officers."  Malbrough v. Commonwealth, 275 Va. 163, 169, 655 S.E.2d 1, 3 (2008) (citation

_____

[1] Judge Morrison accepted Smith's conditional guilty plea and entered the final
conviction and sentencing order.  Judge James C. Hawks ruled on Smith's motion to suppress.

omitted). In doing so, we consider facts presented both at the suppression hearing and at trial. Tizon v. Commonwealth, 60 Va. App. 1, 15, 723 S.E.2d 260, 267 (2012).[2]

The trial court record established that a female prostitute agreed to enter a sports utility vehicle (SUV) in Portsmouth, at the request of the vehicle's driver. The driver thereafter picked up three other males. Brandishing what appeared to be a firearm, a fifth male climbed out of the cargo area of the SUV. Each man forced the victim to perform fellatio on him. The men then drove her to a remote area, beat her with sticks and a two-by-four board, and left her there alone. No evidence suggested any of the men wore masks.

A police officer on patrol found the victim and took her to a police station to report the crime. Based on her statements, the police discovered the SUV, found the weapon (a BB handgun), and interviewed four of the five suspects. A few days after the incident, a Portsmouth detective prepared a photo array consisting of four pages, each containing a photo of a suspect "randomly inserted in the array of six photos." App. at 29. Although Smith had a juvenile arrest record, his photo was unavailable. That being so, the detective took a photograph of Smith with a digital camera and placed the photo on one of the photo array pages. Because the size of Smith's photo was different from the other photos on the page, the detective resized Smith's photo to match the others, which created a "slight elongation" of his face.

Nothing in the detective's interviews with the victim or his independent investigation suggested that one of the assailants had an unusually long face. When presenting the photo array

---

[2] This principle applies to a guilty plea no less than to a case tried upon a plea of not guilty. Under Virginia law, "the court shall try the case" after receiving a guilty plea. Va. Const., art. I, § 8; see also Code § 19.2-257. This does not mean that "evidence *must* be heard upon a plea of guilty." Kibert v. Commonwealth, 216 Va. 660, 664, 222 S.E.2d 790, 793 (1976) (emphasis in original); see also Haring v. Prosise, 462 U.S. 306, 316 (1983). But it does mean that when evidence, a stipulation, or an unobjected-to proffer is presented to the trial court in conjunction with a guilty plea, an appellate court will consider it alongside the other evidence presented during the earlier suppression hearing.

to the victim, the detective did not say or do anything suggesting that he had independent knowledge that Smith participated in the crime. Nor did he identify anyone by name. Before presenting the photo array, the detective told the victim to "look them over carefully," "don't make a jump decision," and, "if you see somebody in there that looks like one of the suspects, initial that, turn it over, write on the back where you know them from." Id. at 29-30; see also id. at 42.

The detective also told the victim he had conducted an investigation and obtained photographs of several suspects that would appear in the four-page photo array. He did not tell her the names of any of the suspects or where their photos would be placed. Without her knowledge, the detective had randomly placed the photo of one suspect on each page of the array. The victim looked over the pages, spending between one and three minutes on each page. The detective testified she picked out Smith's photo with a "hundred percent" certainty that he was one of her attackers. Id. at 45.

Prior to trial, Smith filed a motion to suppress the victim's identification of him from the photo array. Smith claimed the photo array violated his due process rights and should have been excluded from the evidence. The trial court disagreed and found the detective "in no way suggested which photograph was to be considered as the suspect" and, at any rate, the "slight elongation" of Smith's photograph "to make it the same size as the others" was "minor in effect and of no consequence." App. at 65. For these reasons, the court denied the motion to suppress and later received evidence in support of Smith's conditional guilty plea.

II.

On appeal, Smith argues two circumstances of the photo array violated his due process rights: first, the detective "distorted Smith's photo, causing it to stand out in the photo array," and, second, the detective "implied to the witness that the suspect was shown in the photo array."

Appellant's Br. at 17-18. Like the trial court, we disagree that either of these conditions warranted the exclusion of the victim's identification of Smith.

The "due process check on the admission of eyewitness identification" applies only when "the police have arranged suggestive circumstances leading the witness to identify a particular person as the perpetrator of a crime," Perry v. New Hampshire, 132 S. Ct. 716, 720 (2012), and when these circumstances damage the reliability of the identification to the extent that there exists "a very substantial likelihood of irreparable misidentification," id. (quoting Simmons v. United States, 390 U.S. 377, 384 (1968)); see also Neil v. Biggers, 409 U.S. 188 (1972).

Both elements of a due process violation must be shown before the identification can be suppressed. "An identification infected by improper police influence, our case law holds, is not automatically excluded." Perry, 132 S. Ct. at 720. If the "indicia of reliability are strong enough to outweigh the corrupting effect of the police-arranged suggestive circumstances, the identification evidence ordinarily will be admitted, and the jury will ultimately determine its worth." Id.

The defendant bears the burden of proving both elements of the due process violation. Winston v. Commonwealth, 268 Va. 564, 593-94, 604 S.E.2d 21, 37-38 (2004). It is a "weighty burden" for the defendant, Taylor v. Commonwealth, 52 Va. App. 388, 392, 663 S.E.2d 536, 538 (2008) (citation omitted), because the exclusion of such evidence is a "drastic sanction" reserved for "identification testimony which is manifestly suspect," Harker v. Maryland, 800 F.2d 437, 443 (4th Cir. 1986). This approach stems from the "recognition that the jury, not the judge, traditionally determines the reliability of evidence," particularly given the many procedural safeguards at trial "built into our adversary system that caution juries against placing undue weight on eyewitness testimony of questionable reliability." Perry, 132 S. Ct. at 728.

A.

(i) THE ELONGATED PHOTO OF SMITH

The unduly-suggestive test presupposes that the power of suggestion links a photo to a victim's recollection of the individual she accuses of the crime or in some other way implies that the police are singling out a photo as the man who they believe committed the crime. Compare Williamson v. Commonwealth, 211 Va. 57, 59, 175 S.E.2d 285, 286 (1970) (finding the police did not do "anything which would tend to point out defendant, or to set him aside or apart *as the individual whom they suspected* as being the guilty party" (emphasis added)), with Foster v. California, 394 U.S. 440, 443 (1969) (finding photo of suspect unduly suggestive because of his height and that "he was wearing a leather jacket similar to that worn by the robber").

The suggestive effect, in other words, must be something akin to the police saying "to the witness, '*This* is the man.'" Foster, 394 U.S. at 443 (emphasis in original). The suggestion can happen in myriad ways, such as where a photo array includes "pictures of several persons among which the photograph of a single such individual recurs or is in some way emphasized," Simmons, 390 U.S. at 383, thereby baiting the victim to think the police believe he is indeed "the man," Foster, 394 U.S. at 443. And, no doubt, a photo can be impermissibly emphasized so as to attract the victim's selection, as where it alone includes characteristics unique to the victim's reported observations, or where the photo is specifically singled out as one of the suspects being investigated by the police.

For example, it may be "impermissibly suggestive" to depict "only the defendant wearing a shirt of the color described by witnesses." Jarrett v. Headley, 802 F.2d 34, 41 (2d Cir. 1986). In a situation like that, the array contains only one person (the one the police suspect to be the perpetrator) depicted with a highly relevant characteristic. On the other hand, a purely innocuous distinction in a photo, by itself, may suggest nothing of relevance. Thus, it matters very little "that all of the photographs in the array be uniform with respect to a given characteristic" in a

case where, for example, the "differences in the hair styles of those pictured have nothing to do with the description" the witness gave the authorities.  United States v. Smith, 546 F.2d 1275, 1280 (5th Cir. 1977).

Put another way, if a victim claimed she was shot by a man wearing a hat, it might be unduly suggestive for a photo array to include only one man (the one the police suspect to be the shooter) wearing a hat.  The same would be true if the police told the victim, prior to viewing the array, that their lead suspect was a man wearing a hat.  But, if the identification was not "based on the fact" that the victim "remembered that [the attacker] had worn a hat," there is nothing "impermissibly suggestive" about a suspect being "singled out to wear a hat."  Coleman v. Alabama, 399 U.S. 1, 6 (1970).[3]  Such a coincidence might suggest only that the man likes hats, not that he is the prime suspect.

Applying these principles, we find Smith's first argument — challenging his slightly elongated photo — implicates no due process concerns.  The resized photo did not *suggest* to the

---

[3] See also United States v. Hargrove, 508 F.3d 445, 450 (7th Cir. 2007) (photo of one with "glasses and beard" was "not suggestive of anything" because no witness suggested the perpetrators "were bearded or wore glasses"); United States v. Brennick, 405 F.3d 96, 100 (1st Cir. 2005) ("none of the witnesses described [perpetrator] as wearing a zippered mock turtleneck," and thus "it is irrelevant that he is the only one pictured wearing one"); United States v. Gibson, 135 F.3d 257, 260 (2d Cir. 1998) (because no witness "told police the perpetrator wore a goatee, portraying [defendant] with a goatee would not be suggestive"); United States v. Bautista, 23 F.3d 726, 731 (2d Cir. 1994) (photo not "impermissibly suggestive" even though it was "brighter and somewhat more close-up than" other photos); United States v. Mickens, 926 F.2d 1323, 1329 (2d Cir. 1991) ("the fact that [defendant's] picture was the only photocopy in the array is insignificant"); United States v. Archibald, 734 F.2d 938, 940 (2d Cir. 1984) (inscription "would hardly suggest to an identifying witness that [he] was more likely to be the culprit"); United States v. Lincoln, 494 F.2d 833, 839 (9th Cir. 1974) (defendant's "color photo" shown with nine other types of photos is not "impermissibly suggestive"); United States v. Coppola, 486 F.2d 882, 887 (10th Cir. 1973) ("inscription on the photograph" did not suggest "one picture should be picked out over the others"); United States v. Magnotti, 454 F.2d 1140, 1141-42 (2d Cir. 1972) ("seven 'mug shots' of other persons along with a full-view photograph of the defendant" is not "impermissibly suggestive" because the "difference between [defendant's] photograph and the other mug shots would hardly suggest to an identifying witness that [defendant] was more likely to be the culprit").

victim that the long-faced person was one of the assailants. She said nothing to the officers about one of her assailants having a long or narrow face. Nor can it be generalized that young men with elongated faces are more often than not criminals. The detective, moreover, did not hint that the investigation implicated a long-faced man.

In short, Smith's assertion that his photo stood out because none of the other pictures were elongated does not prove that this innocuous feature *suggested* to the victim that the long-faced male attacked her. As a result, Smith did not demonstrate in the trial court that the police "arranged suggestive circumstances" leading the victim to identify him as the "perpetrator of a crime." Perry, 132 S. Ct. at 720.

(ii) THE DETECTIVE'S STATEMENT ABOUT SUSPECTS

Smith also asserts the detective "implied to the witness that the suspect was shown in the photo array." Appellant's Br. at 18. "Although he did not tell her 'in so many words' that there was a suspect's photo in the array," Smith concedes, the detective "certainly implied it strongly." Id.

We do not disagree with Smith's characterization of the evidence on this point. The detective told the victim he had conducted an investigation and implied that photographs of several suspects would appear in the photo array. The detective did not tell her, however, where the photos were placed among the four pages of photos. Nor did the detective suggest specifically "which persons in the pictures were under suspicion." Simmons, 390 U.S. at 385. Like the trial court, we find these circumstances insufficient to exclude the witness's identification of Smith's photo.

It is true that the chance of misidentification is "heightened if the police indicate to the witness that they have other evidence that one of the persons pictured committed the crime." Dreway v. Commonwealth, 213 Va. 186, 190, 191 S.E.2d 178, 181 (1972) (quoting Simmons,

390 U.S. at 383). But this one fact, by itself, does not warrant the outright exclusion of the evidence. To be sure, "the mere fact that the police officer wanted [the victim] to view the pictures carried with it, necessarily and unavoidably, the implication that the officer believed the guilty party might be among those pictured." Id.; see also Hill v. Commonwealth, 2 Va. App. 683, 697, 347 S.E.2d 913, 921 (1986). Thus, an officer's "expressed . . . belief that [the] assailant was among those depicted in the photographs" cannot be deemed "impermissibly suggestive." Dreway, 213 Va. at 190, 191 S.E.2d at 181.

As Professor LaFave has observed, many courts have "rejected challenges where the officer simply stated that the array included 'a suspect,' 'inasmuch as a witness would assume that to be the case.'" Wayne R. LaFave, Criminal Procedure § 7.4(e), at 957 n.90 (3d ed. 2007); see also Commonwealth v. Watson, 915 N.E.2d 1052, 1057 (Mass. 2009) (holding photo array not unduly suggestive merely because the police said "that the array included the photograph of a suspect"); Gatewood v. State, 857 A.2d 590, 600 (Md. Ct. Spec. App. 2004) (holding "suggest[ion] that [the suspect's] photograph was in the array" was not impermissibly suggestive because the witness "could reasonably expect that the array shown to him would have contained a suspect").

The failure of investigators to follow best practices may be effectively attacked by "cross-examination at trial which exposes to the jury the method's potential for error." Simmons, 390 U.S. at 384; Watson, 915 N.E.2d at 1059 (refusing to constitutionalize "better practice" guidelines). The constitutional exclusion is warranted only if the procedure "was *so impermissibly suggestive* as to give rise to a *very substantial* likelihood of irreparable misidentification." Simmons, 390 U.S. at 384 (emphasis added). The "very substantial likelihood" standard cannot be met simply because "the identification procedure employed may have in some respects fallen short of the ideal." Id. at 385-86.

Here, the victim had no way of knowing which of the photographed individuals were being investigated by the police. The four-page photo array consisted of twenty-four pictures of different men. Each page displayed pictures of six men of the same race, approximate age, and similar skin color. The possible implication that one or more of these individuals were under suspicion is hardly grounds for declaring the entire exercise corrupted by police misconduct. Every victim knows the police strive to find suspects and, for this reason, probably include some or all of those suspects in the photo array seeking to either confirm or dispel their suspicions. This is, after all, the whole point of the exercise. To be sure, a "witness ordinarily expects to be asked to make an identification of someone who either fits the description of a suspect or is suspected to have been involved in the reported crime." Watson, 915 N.E.2d at 1058 (citation omitted); see also LaFave, *supra* § 7.4(e), at 957 n.90.

"While it might have been better if the officer had not expressed his belief that [the] assailant was among those depicted in the photographs," the "statement of the police officer" to the victim did not make the photo array "impermissibly suggestive." Dreway, 213 Va. at 190, 191 S.E.2d at 181. For these reasons, we agree with the trial court that the officer's implied statement to the victim that the suspects were among the four pages of pictures was not so impermissibly suggestive as to taint the victim's identification of Smith as one of her attackers.

B.

INDICIA OF RELIABILITY OF THE VICTIM'S IDENTIFICATION

We also do not believe the elongated photo of Smith created "a very substantial likelihood of irreparable misidentification." Perry, 132 S. Ct. at 720 (quoting Simmons, 390 U.S. at 384). When "indicia of reliability" are "strong enough to outweigh" any impermissible suggestion, due process leaves it to the factfinder to "ultimately determine its worth." Id.; see, e.g., McCary v. Commonwealth, 228 Va. 219, 232-34, 321 S.E.2d 637, 644-45 (1984) (holding

- 9 -

victims' high "level of certainty" cured the prior undue suggestion); <u>Bryant v. Commonwealth</u>, 10 Va. App. 421, 427, 393 S.E.2d 216, 220 (1990) (finding witness identification reliable despite the fact that police showed the victim only pictures of one suspect).

In this case, the victim was not limited to a fleeting glance at her attackers. Rather, she was forced to be with each of the men in the SUV long enough for the crimes to be committed. She faced them again at the remote location where she was beaten and left alone. The detective said the victim was a "hundred percent" sure that Smith was one of her assailants. App. at 45. We thus agree with the trial court that the distortion in Smith's photograph was "minor in effect and of no consequence," <u>id.</u> at 65, and that the reliability of the victim's identification went to the weight of the evidence, not its admissibility.

III.

Because the trial court did not err by denying Smith's motion to suppress the victim's identification of him from the photo array, we affirm his convictions for forcible sodomy and abduction.

<u>Affirmed.</u>