COURT OF APPEALS OF VIRGINIA

Present: Judges Chafin, Russell and AtLee
Argued at Richmond, Virginia


MARQUIS DEVON COOKE

v.      Record No. 1976-16-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE RICHARD Y. ATLEE, JR.
FEBRUARY 20, 2018


FROM THE CIRCUIT COURT OF THE CITY OF PETERSBURG
Joseph M. Teefey, Jr., Judge[1]

Paul S. Roskin (Vergara & Associates, on briefs), for appellant.

Elizabeth Kiernan Fitzgerald, Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


A jury of the Circuit Court of the City of Petersburg ("trial court") found appellant

Marquis Devon Cooke guilty of carjacking and robbery.[2] It sentenced him to twenty years in

prison for those offenses. On appeal, Cooke argues that the trial court erred by denying his

motion to suppress the victims' identifications of Cooke because they were procured through an

unconstitutionally suggestive procedure. For the following reasons, we affirm.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Although Judge Teefey sentenced Cooke, Judge Designate Pamela S. Baskervill
presided over the trial, and Judge Designate James F. D'Alton, Jr. heard Cooke's motion to
suppress.

[2] Cooke was also convicted of additional related charges, including felony destruction of
property and felony eluding. These charges are not before this Court on appeal.

## I. BACKGROUND

### A. *Standard of Review*

On review of the denial of a motion to suppress, "we view the facts in the light most favorable to the Commonwealth, and draw all reasonable inferences from those facts." Payne v. Commonwealth, 65 Va. App. 194, 198, 776 S.E.2d 442, 444 (2015), aff'd, 292 Va. 855, 794 S.E.2d 577 (2016). "It is our duty to affirm the trial court's judgment unless that judgment is plainly wrong or without evidence to support it." Reid v. Commonwealth, 65 Va. App. 745, 753, 781 S.E.2d 373, 377 (2016) (quoting Muhammad v. Commonwealth, 269 Va. 451, 536, 619 S.E.2d 16, 65 (2005)). In our review, "we consider facts presented both at the suppression hearing and at trial." Ross v. Commonwealth, 61 Va. App. 752, 757, 739 S.E.2d 910, 912 (2013) (quoting Smith v. Commonwealth, 61 Va. App. 112, 116, 733 S.E.2d 683, 685 (2012)). Viewing the facts through this evidentiary lens, we then "review *de novo* the trial court's application of legal standards to the particular facts of the case." Logan v. Commonwealth, 51 Va. App. 111, 114-15, 655 S.E.2d 30, 32 (2008).

### B. *Facts*

In November 2012 at approximately 7:15 p.m., Priscilla Sootoo and James Flowers were sitting in the front seats of a sedan, parked in front of Flowers's house. The vehicle was a silver Chevy Cavalier with vanity plates reading "BE CLEAR." Sootoo and Flowers were talking while Sootoo was using her iPhone.

Suddenly, the front driver's-side door opened and a man, later identified as Cooke, reached in and grabbed Sootoo's phone. She initially thought it was a prank and attempted to retrieve it, at which point the robber pointed a gun at her head. Although it was "getting dark," the vehicle's dome lights were illuminated, allowing her to see the robber, whom she described as a "somewhat built," light-skinned black man. He wore dark clothes and a hat, and his face

was covered by a red bandana from the nose down. She noted that he had brown eyes and thick eyebrows. Sootoo told him he could have the phone. While alternately pointing the gun at Sootoo and Flowers, the robber leaned into the vehicle and frisked them both for money, although neither had any. This took three to five minutes, giving them the opportunity to observe the robber's appearance. The robber pulled Sootoo out of the driver's seat, and directed Flowers to start the vehicle and then get out. Sootoo and Flowers ran into the house. The robber got into the vehicle and drove off.

"Within 30 seconds" of going into Flowers's house, Sootoo left to call the police. On her way, she ran into police officers at a gas station. She told them she had been robbed and described the stolen vehicle and perpetrator. The police issued a "be on the lookout" advisory over the radio, including a description of the stolen vehicle and vanity plates. The police drove Sootoo back to Flowers's house.

Another patrolling officer saw the stolen vehicle on the road and attempted to initiate a stop. The vehicle fled at speeds exceeding 100 miles per hour. During the chase, the vehicle smashed into multiple parked cars, damaging both the stolen Cavalier and the other cars. Other police cruisers joined the pursuit. Finally, the stolen vehicle crashed into a fence and the driver (the only person in the vehicle) exited and fled on foot.

Corporal Richard Marks, the canine unit supervisor for the Petersburg Bureau of Police, was driving one of the police cruisers pursuing the suspect. After the crash, he and his dog continued that pursuit on foot. Based on other officers' reports as to where they last saw the suspect, Corporal Marks went to that location to track him. The dog led them to a wooded area behind a house, then found and immobilized the suspect, Cooke, who was hiding in the brush. The police found two cell phones on the ground underneath Cooke, one of which was Sootoo's iPhone.

Police drove Sootoo and Flowers to the site of the wreck. The crashed vehicle matched her description, including the vanity plates reading "BE CLEAR." A detective told Sootoo and Flowers that someone was in custody and asked them if they were willing to "see if you can make a positive identification on the person that they have in custody." This was to be done in what is known as a show-up.[3] They were brought to a man handcuffed in the back of a police vehicle. He was not wearing a hat or bandana, but Sootoo identified him as the assailant. She recognized his body size, his skin tone, and his thick eyebrows. She asked police to have him open his eyes, at which point she confirmed that this was the perpetrator. Flowers was beside Sootoo, and also confirmed Cooke's identity as the person who had stolen the phone and vehicle. He had "no doubt" that this was the robber, based on his skin, his eyes, and, in particular, his "bushy" eyebrows. The identifications took place within "not even 15, 20 minutes" from when the car was stolen.

Cooke moved to suppress these identifications, as well as those from the preliminary hearing, arguing that they were "highly suggestive, unreliable and prejudicial," and thus violated his right to due process. At the hearing on the suppression motion, the judge acknowledged that "show-ups, of course, are fraught with problems," but that "the one thing that saves show-ups over and over and over is the promptness of the confrontation." Although Cooke was in custody at the time of the identification, the judge found the circumstances had not been "arranged for that purpose," and were not unduly suggestive. The trial court judge therefore denied Cooke's motion to suppress.

---

[3] A "show-up" describes a type of out-of-court procedure where the police present a single suspect (as opposed to a lineup or array of photographs) to an eyewitness for identification.

## II. ANALYSIS

Cooke argues that the circumstances surrounding Sootoo's and Flowers's identifications violated his due process rights because of the suggestiveness of the show-up procedure. He alleges that the identification was suggestive because of Cooke's proximity to the stolen vehicle, because he was handcuffed in the police cruiser, and because Sootoo and Flowers were both present for, and thus could hear, each other's identifications, possibly influencing each other. He argues that those identifications, which he contends were unconstitutional, were the basis of, and thus tainted, any subsequent in-court identifications.

"[P]re-trial show-ups are not *per se* violative of constitutional rights . . . ." Blevins v. Commonwealth, 40 Va. App. 412, 423, 579 S.E.2d 658, 664 (2003) (italics added) (quoting Ford v. Commonwealth, 28 Va. App. 249, 258, 503 S.E.2d 803, 807 (1998)). In fact, it "may be the most practical way to confirm or dispel an officer's belief that a suspect is the perpetrator of a crime," Scott v. Commonwealth, ___ Va. App. ___, ___, ___ S.E.2d ___, ___ (Jan. 30, 2018), and "fosters the desirable objectives of fresh, accurate identification which in some instances may lead to the immediate release of an innocent suspect and at the same time enable the police to resume the search for the fleeing culprit while the trail is still fresh," id. at ___, ___ S.E.2d at ___ (quoting Martin v. Commonwealth, 210 Va. 686, 691, 173 S.E.2d 794, 798 (1970)).

"Evidence of an out-of-court identification is admissible at trial if either '(a) the identification was not unduly suggestive, or (b) the procedure was unduly suggestive, but the identification is nevertheless so reliable . . . that there is no substantial likelihood of misidentification.'" Logan, 51 Va. App. at 115, 655 S.E.2d at 32 (quoting Hill v. Commonwealth, 2 Va. App. 683, 693, 347 S.E.2d 913, 918 (1986)). In this case, we need only examine whether the identification was the product of unduly suggestive procedures.

- 5 -

Some degree of suggestiveness is inherent in all police-directed identifications, including show-ups. See Perry v. New Hampshire, 565 U.S. 228, 244 (2012) ("Most eyewitness identifications involve some element of suggestion. Indeed, all in-court identifications do."). That suggestiveness is all the more unavoidable in circumstances like those here, given that Cooke was the only suspect present and was in custody near the site of the crashed stolen vehicle.

The question, however, is not if the circumstances were suggestive, but whether they were unduly so, because "due process concerns arise only when law enforcement officers use an identification procedure that is both suggestive *and* unnecessary." Id. at 238-39 (emphasis added). Here, whatever suggestiveness existed served the practical purpose of expeditiously obtaining an accurate identification. The police knew an armed robber had just stolen a vehicle and other property. Someone driving that vehicle then led a dangerous, high-speed chase through a residential area, not only damaging property, but also posing a threat to the safety of other drivers, pedestrians, and law enforcement. After the stolen vehicle crashed, the suspect fled on foot. During this pursuit, law enforcement lost sight of him and used a dog to track him to where he was hiding. After finding and apprehending Cooke, police had a practical public safety interest in confirming that he was the same individual who robbed Sootoo and Flowers at gunpoint and then recklessly fled in the stolen vehicle. If they had arrested the wrong person, an armed criminal would still be at large. Accordingly, the identification procedures employed here, albeit suggestive, were not unduly so, as they served a practical and necessary function.[4]

_____

[4] Finding the identification procedure was not unconstitutionally suggestive, we need not analyze why the identifications were reliable under Neil v. Biggers, 409 U.S. 188 (1972), examine the subsequent in-court identifications, or address harmless error. Perry, 565 U.S. at 233 ("When no improper law enforcement activity is involved . . . it suffices to test [an eyewitness identification's] reliability through the rights and opportunities generally designed for that purpose," such as the presence of counsel, cross-examination of the eyewitness, evidentiary

III.  CONCLUSION

The identifications admitted here were not the product of an unduly suggestive procedure.  Therefore, the trial court did not err in denying Cooke's motion to suppress.

<u>Affirmed.</u>

---

rules, and jury instructions on "both the fallibility of eyewitness identification and the requirement that guilt be proved beyond a reasonable doubt.").