COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Malveaux, Friedman and Senior Judge Petty
Argued at Williamsburg, Virginia


VINCENT RESHAAD LAMB

                                             MEMORANDUM OPINION* BY
v.        Record No. 0994-24-1            JUDGE MARY BENNETT MALVEAUX
                                               SEPTEMBER 9, 2025
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Rufus A. Banks, Jr., Judge[1]

Monica Tuck, Assistant Public Defender (Virginia Indigent Defense
Commission, on briefs), for appellant.

Rachel A. Glines, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following conditional *Alford* guilty pleas,[2] the trial court convicted Vincent Reshaad Lamb

("appellant") of possession of a firearm by a non-violent felon, in violation of Code § 18.2-308.2,

carrying a concealed weapon, in violation of Code § 18.2-308(A)(i), obstruction of justice, in

violation of Code § 18.2-460(B), and failure to obey a traffic light, in violation of Code § 46.2-833.

On appeal, he argues that the trial court erred in denying his motion to suppress because his car was

searched in the absence of reasonable suspicion that he was dangerous and could gain immediate

control of a weapon in the car.  For the following reasons, we affirm.

--------

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Judge Banks accepted appellant's conditional guilty pleas and entered the sentencing order in this case.  Judge Robert G. MacDonald ruled on the motion to suppress, which is the issue before us on appeal.

[2] *North Carolina v. Alford*, 400 U.S. 25 (1970).

## I. BACKGROUND

On review of the denial of a motion to suppress, an appellate court "state[s] the facts 'in the light most favorable to the Commonwealth, giving it the benefit of any reasonable inferences'" from the evidence. *Hill v. Commonwealth*, 297 Va. 804, 808 (2019) (quoting *Commonwealth v. White*, 293 Va. 411, 413 (2017)).

On June 2, 2023, Officers Feliz-Rodriguez and Adams of the Chesapeake Police Department were driving in an unmarked police vehicle. In a residential neighborhood, at around 5:00 p.m. in full daylight, Feliz-Rodriguez saw a black Audi sedan pass him. The Audi's driver, appellant, slowed down at a red light, but did not stop completely prior to turning right. Feliz-Rodriguez then began a traffic stop by turning on his emergency lights.

Appellant did not stop "immediately,"[3] but instead continued down Atlantic Avenue. Then, "[w]hile slowing to stop . . . , the officers were able to see . . . [appellant] look back at [them] several times." Feliz-Rodriguez also saw appellant "lean[] straight forward, like he was reaching under his seat."

Appellant, the sole occupant of the vehicle, stopped his car on a side road off Atlantic Avenue. Feliz-Rodriguez explained to appellant the reason for the traffic stop and asked for appellant's driver's license and registration. Appellant's "hand was a little shaky when giving [Feliz-Rodriguez] his driver's license." The officer also noticed "the rise and fall of [appellant's] chest," and that appellant was "breathing heavily."

About 40 seconds into the stop, and after Feliz-Rodriguez had asked appellant for his license and registration, appellant responded "no" when asked by the officer if he had any firearms in his car. About 45 seconds into the stop, Feliz-Rodriguez asked appellant to step out

---

[3] Feliz-Rodriguez testified, and the parties stipulated, that appellant failed to stop "immediately" after the police vehicle's lights were activated; however, the record does not indicate exactly how far appellant traveled after the lights were turned on.

of his car. Appellant shook his head no and stated that he did not do anything wrong. He told Feliz-Rodriguez that he "kn[ew] [his] rights" and asked to speak to a sergeant. Appellant then stated that he was pulled over because he was "a black guy in a good car." He asked the officer for a ticket for the traffic infraction.

Feliz-Rodriguez asked appellant three more times to step out of the car. Appellant told the officer that he "didn't do anything" and refused to exit the car. About 1 minute and 30 seconds into the stop, Feliz-Rodriguez opened the driver's side car door, and in response appellant attempted to close it. Appellant, raising his voice, again asked the officer to call a sergeant. Then, in an emotional and irate manner, appellant told Feliz-Rodriguez that he was not getting out because the officer had no reason to have him exit the car. He also stated that he felt scared and unsafe.

After Feliz-Rodriguez's initial request, appellant was asked approximately 14 more times to exit the car. Because appellant refused, Feliz-Rodriguez and Adams forcibly removed him while he screamed "this is wrong," "get off of me," and "help me." After appellant was removed from the car and handcuffed, Feliz-Rodriguez searched under the driver's seat and found a 9-millimeter firearm.

Feliz-Rodriguez had worked in the area where the traffic stop occurred for the previous four years. That area "ha[d] the highest rate of . . . violent crimes in the city" and Feliz-Rodriguez had personally recovered "a lot" of firearms in that location, including 45 firearms the year of the stop, while his entire squad had seized 192.

Appellant filed a motion to suppress the evidence obtained from the search of his car. After a hearing, the trial court denied the motion to suppress. In doing so, the court found "that in no event did [Feliz-Rodriguez] in any way act inappropriately. To the contrary, he followed what is required of an officer, and he did so despite the conduct of [appellant], who was not

cooperative and not responsive to the authority of the officer." The court noted that the "observations that the officer makes of [appellant] while [he was] traveling, [his] repeated response of . . . looking at [Feliz-Rodriguez] in [the] rearview mirror, and [Feliz-Rodriguez's] ability to see [appellant's] conduct within the vehicle with [appellant's] head going down, bobbing down and coming back up" led the officer to be "concerned, at that point, that there is a gun underneath the seat of [appellant's] vehicle." Further, "[w]hen [Feliz-Rodriguez] approaches the vehicle, he describes what observations he made as in regards to [appellant's] shaking hand and the exhilarated rise and fall of [appellant's] chest."

Appellant's counsel withdrew from the case, and new counsel was appointed to represent him. Appellant then filed a motion to reconsider the trial court's prior denial of his suppression motion. The trial court granted the motion to reconsider and held a second hearing on the motion to suppress. The parties presented argument, but no additional evidence, at this hearing. The trial court again denied the motion to suppress without making any additional factual findings.

This appeal followed.

## II. ANALYSIS

On appeal, appellant asserts that the trial court erred in denying his motion to suppress because his car was searched without reasonable suspicion that he was dangerous and might gain immediate control of a weapon in the car.

The burden to establish that the denial of a motion to suppress evidence constituted reversible error rests with the accused. *Roberts v. Commonwealth*, 55 Va. App. 146, 150 (2009). When reviewing an order denying a motion to suppress, "the Court reviews *de novo* the overarching question of whether a search or seizure violated the Fourth Amendment." *Moreno v. Commonwealth*, 73 Va. App. 267, 274 (2021) (quoting *Williams v. Commonwealth*, 71 Va. App. 462, 475 (2020)). "However, we defer to the trial court's 'findings of historical fact,' taking care

- 4 -

to review them 'only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers.'" *Bagley v. Commonwealth*, 73 Va. App. 1, 13 (2021) (quoting *Malbrough v. Commonwealth*, 275 Va. 163, 169 (2008)). In addition, an appellate court "owe[s] deference to the trial court's interpretation of all of the evidence, including video evidence." *Meade v. Commonwealth*, 74 Va. App. 796, 806 (2022). We thus review video evidence "not to determine what we think happened, but for the limited purpose of determining whether any rational factfinder could have viewed it as the trial court did." *Id.* Further, in reviewing a denial of a motion to suppress following entry of a conditional guilty plea, this Court considers the evidence introduced at the suppression hearing along with any "evidence," "stipulation," or "unobjected-to proffer . . . presented to the trial court in conjunction with [that] guilty plea." *Smith v. Commonwealth*, 61 Va. App. 112, 116 n.2 (2012).

The Fourth Amendment protects individuals against unreasonable searches and seizures. U.S. Const. amend. IV. "A traffic stop is a '"seizure" of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment.'" *Jones v. Commonwealth*, 71 Va. App. 375, 380 (2019) (quoting *Heien v. North Carolina*, 574 U.S. 54, 60 (2014)). After a police officer initiates a traffic stop, "the Fourth Amendment permits police to conduct a pat down of a person and a protective sweep of his or her vehicle for weapons under certain circumstances." *Bagley*, 73 Va. App. at 13. A vehicle sweep "is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." *Michigan v. Long*, 463 U.S. 1032, 1049 (1983) (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). The "police may conduct a protective sweep of the vehicle based on the assumption that when the stop concludes, the individual presumably 'will be permitted to reenter his automobile' and

- 5 -

'will then have access to any weapons inside.'" *Bagley*, 73 Va. App. at 15 (quoting *Long*, 463 U.S. at 1052). "Such a protective search is authorized even if the suspect is under police restraint at the time the search is conducted, because the suspect may be able to escape such restraint, or may later regain access to the vehicle if he is not arrested." *Gross v. Commonwealth*, 79 Va. App. 530, 537 (2024) (quoting *United States v. Elston*, 479 F.3d 314, 320 (4th Cir. 2007)).

"To establish reasonable suspicion, an officer must be able to articulate more than an unparticularized suspicion or 'hunch' that criminal activity is afoot." *McCain v. Commonwealth*, 275 Va. 546, 552 (2008) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000)). An officer must "supply a particularized and objective basis for suspecting criminal activity on the part of the particular person stopped." *Id.*

> The requisite level of *belief*, when calibrated to reasonable suspicion, is less than probable cause, less than a preponderance, and certainly less than beyond a reasonable doubt. All that is required is a *suspicion* — a reasonable one that is not "the product of a volatile or inventive imagination" or one "undertaken simply as an act of harassment."

*Hill*, 297 Va. at 817 (quoting *Terry*, 392 U.S. at 28). As applied to protective sweeps of vehicles, "[t]he standard requires proof of only a reasonable belief that the suspect *might* have a weapon and gain control of it." *Bagley*, 73 Va. App. at 16.

In addition, "[w]hether reasonable suspicion exists is 'based on an assessment of the totality of the circumstances,' which 'allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person.'" *McArthur v. Commonwealth*, 72 Va. App. 352, 359-60 (2020) (first quoting *Harris v. Commonwealth*, 276 Va. 689, 695 (2008); and then quoting *Branham v. Commonwealth*, 283 Va. 273, 280 (2012)). "Circumstances relevant in this analysis include characteristics of the area surrounding the stop, the time of the stop, the specific conduct of the suspect individual, the character of the offense under suspicion,

- 6 -

and the unique perspective of a police officer trained and experienced in the detection of crime." *McCain*, 275 Va. at 554. "The inquiry is not whether each individual factor, viewed alone, 'is susceptible [to an] innocent explanation' but, rather, whether the various factors, '*[t]aken together*,' are sufficient to 'form a particularized and objective basis' for an officer's suspicion." *Bagley*, 73 Va. App. at 16 (alterations in original) (quoting *United States v. Arvizu*, 534 U.S. 266, 277 (2002)).

We conclude that the circumstances indicating that appellant might have a weapon and gain control of it, viewed in totality, provided sufficient reasonable suspicion justifying the protective sweep of appellant's car. Here, appellant failed to stop immediately after police activated their emergency lights and instead continued to drive down Atlantic Avenue.[4] As he continued driving, appellant repeatedly looked back at the officers in his rearview mirror and, at one point, leaned forward and reached under his seat. After appellant stopped his car and was approached by Feliz-Rodriguez, the officer noted that appellant was "breathing heavily" and that his "hand was a little shaky when giving [Feliz-Rodriguez] his driver's license." Appellant then refused to exit his vehicle after being told to do so, became irate and emotional in response to the officer's command, and ignored many further commands to leave his car. The stop also occurred in high-crime area where Feliz-Rodriguez had personally recovered many firearms.

Appellant argues, however, that these circumstances did not provide the officers with reasonable suspicion to conduct a protective sweep of his car because: (1) he was stopped for a minor traffic infraction rather than a criminal offense; (2) the fact that the stop occurred in a high

---

[4] Based on this record, however, appellant's delay in stopping is less of an indication of danger to the officers than in cases where details were adduced about the exact length of the delay, and about whether the defendant passed other available side streets where he could have stopped.

crime area did not create reasonable suspicion that he was armed and dangerous; and (3) his single reaching motion did not provide the requisite level of reasonable suspicion for the search.

We do not disagree with appellant's assertions, viewed individually. As noted by appellant, one circumstance this Court considers in determining whether reasonable suspicion exists is the "character of the offense under suspicion." *McCain*, 275 Va. at 554. We thus take no issue with appellant's contention that "[w]hen officers are investigating a complaint of violence, their belief that someone may be armed and dangerous is more likely to be reasonable," and in "contrast, when officers encounter a suspect based upon a minor traffic infraction or equipment violation, like they did with [appellant], this circumstance weighs against a quick conclusion that the individual is armed and dangerous." We also agree with appellant's contention that the fact that this traffic stop occurred in a high crime area does not itself create reasonable suspicion that he was armed and dangerous; indeed, we have previously noted that "mere presence in a 'high crime area' is insufficient as a matter of law to provide reasonable suspicion for an investigative stop under *Terry*." *Jones v. Commonwealth*, 53 Va. App. 171, 179 (2008). And appellant is correct that a suspect's "single reaching motion" while driving, by itself, would not provide reasonable suspicion to conduct a protective sweep of the car.[5] But appellant's arguments ignore the fact that this Court does not consider each circumstance in

---

[5] In asserting that this case presents one where a single reaching movement did not establish the requisite reasonable suspicion for a protective sweep, appellant relies on an unpublished decision of this Court, *Commonwealth v. Hendrick*, No. 1054-22-2 (Va. Ct. App. Dec. 29, 2022). But there are additional factors present here indicating that appellant might have possessed a weapon and posed a danger to officers that were absent in *Hendrick*. Unlike the defendant in *Hendrick*, appellant did not stop "immediately" after the police vehicle's emergency lights were activated and he displayed nervous behavior when approached by officers. *See Hendrick*, slip op. at 2. And, significantly, the defendant in *Hendrick* was cooperative to the officers and complied with their request that he step out of his car. *Id.* at 14-15. In contrast, appellant failed to comply with Feliz-Rodriguez's repeated commands to step out of the car and became highly emotional and irate, thus indicating to a reasonable officer that his refusal to exit the car was due to the possibility that appellant had a weapon concealed in the car.

isolation, but instead views the totality of the circumstances to determine whether reasonable suspicion exists. *See Arvizu*, 534 U.S. at 273-74 (holding that courts must take into account the "totality of the circumstances" and that the factors leading to a finding of reasonable suspicion must not be viewed in "isolation from each other"). When viewed through this lens, we conclude that the trial court did not err in denying appellant's motion to suppress because, as discussed above, the officers had reasonable belief that appellant might have had a weapon in his car and could have gained immediate control of it.[6]

## III. CONCLUSION

We hold that the trial court did not err in denying appellant's motion to suppress. Accordingly, we affirm the judgment of the trial court.

*Affirmed.*

---

[6] Appellant also argues that his response to Feliz-Rodriguez's commands that he exit the car should not be interpreted as an indicator of dangerousness, asserting that "[i]t would be unreasonable to expect a layperson to know that officers can lawfully demand that they step out of their vehicle under any circumstances." (Emphasis omitted). We disagree. Just as a suspect's cooperative demeanor would indicate to a reasonable officer that the suspect is less likely to be concealing a weapon that could pose a potential danger to the officer, a combative suspect who refuses to exit a car raises the suspicion that the individual might have a weapon concealed in the car.

Appellant also argues that his refusal to exit the vehicle should not factor into the reasonable suspicion analysis because "[t]here is now widespread recognition of the danger that black men face when they are the subject of traffic stops," and thus his fear was justified and his refusal to exit the vehicle did not indicate that he was armed and likely to gain control of a weapon in the car. We decline to address this specific argument on appeal because appellant failed to raise it before the trial court. *See* Rule 5A:18.