COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges Kelsey, McCullough and Senior Judge Haley
Argued at Salem, Virginia

PARKER CHAD ROSS

                                                              OPINION BY
v.      Record No. 0888-12-3                    JUDGE D. ARTHUR KELSEY
                                                              APRIL 16, 2013
COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
F. Patrick Yeatts, Judge

Joseph A. Sanzone (Sanzone & Baker, P.C., on brief), for
appellant.

Eugene Murphy, Senior Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.

A jury convicted Parker Chad Ross of unlawfully possessing firearms after having been

convicted of a felony.  Ross argues on appeal that the trial court should have suppressed the

evidence of his guilt because the police discovered the firearms in his residence without a

warrant.  We agree and reverse his conviction.

I.

When reviewing a denial of a suppression motion, we view the evidence "in the light

most favorable to the Commonwealth, giving it the benefit of any reasonable inferences." Glenn

v. Commonwealth, 49 Va. App. 413, 416, 642 S.E.2d 282, 283 (2007) (*en banc*) (citation

omitted), aff'd, 275 Va. 123, 654 S.E.2d 910 (2008).  This standard requires us to "give due

weight to inferences drawn from those facts by resident judges and local law enforcement

officers." Jones v. Commonwealth, 279 Va. 521, 528, 690 S.E.2d 95, 99 (2010) (citation

omitted).  "In doing so, we consider facts presented both at the suppression hearing and at trial."

Smith v. Commonwealth, 61 Va. App. 112, 116, 733 S.E.2d 683, 685 (2012).

So viewed, the evidence showed Ross filed a petition in the Amherst County Juvenile and Domestic Relations District Court seeking additional visitation with his daughter, who was in the physical custody of her mother. The JDR district court ordered the Lynchburg Department of Social Services (DSS) to conduct a "home study" of Ross and to report its findings to the court. See App. at 42. The order authorized an unannounced visit, but did not authorize the DSS social worker to enter Ross's residence against his will.

Prior to conducting the home study, the DSS social worker determined that Ross was a "convicted felon,"[1] id. at 19, and suspected him of distributing marijuana. The social worker also obtained from an undisclosed source a photo of Ross holding what appeared to be an SKS rifle. Another photo showed Ross and one of his children together holding the same rifle. The social worker also suspected Ross of a "violent background with women" including his ex-wife. Id. Given his concerns, the social worker asked the Lynchburg police to provide backup security during the home visit. The social worker provided the police with the results of his investigation of Ross. He also advised the police "there was a possibility there may be minor children in the residence." Id. at 20.

On the day of the home visit, the social worker arrived at Ross's home and spoke with Ross in the front yard. As the social worker remembers it, Ross "was trying everything verbally to convince me that he didn't want me in his home at that point." Id. at 46. Ross did not threaten the social worker or commit any criminal act in the social worker's presence.

A police officer, viewing the situation from an unmarked police car, saw Ross "getting upset and somewhat agitated" and "flaring his arms around" while speaking to the social worker.

---

[1] In 2004, the JDR district court found Ross guilty of two counts of distributing cocaine, a felony under Code § 18.2-248. Because he was 17 at the time of the offense, Ross received a delinquency adjudication from the JDR district court.

Id. at 7. The officer called for uniformed officers in a marked police car to pull up in front of the home. As they drove up, they observed Ross to be "extremely nervous," "very tense and expressionless," and his body "appeared to become very rigid and upright." Id. at 15. When Ross saw the marked police car come to a stop, he ran back into his residence.

The uniformed officers did not observe Ross commit any "criminal act" or possess any "dangerous instrumentality." Id. at 17. Nor did they conclude they had "probable cause" to arrest Ross for any crime. Id. at 18. Nonetheless, while the social worker remained outside, two officers, with weapons drawn, entered Ross's residence and placed him in handcuffs. No evidence suggested he was armed or about to arm himself. The officers observed a small child on a couch. The officers then made a protective sweep of the residence and discovered in plain view marijuana and various firearms. Based upon their observations, the officers obtained a search warrant and seized the incriminating evidence.

Prior to trial, Ross moved to suppress the incriminating evidence found in his residence. He claimed the officers' warrantless entry violated the Fourth Amendment, and thus, the later warrant based upon that entry was likewise invalid. The trial court denied the motion and conducted a jury trial at which Ross was convicted of possession of a firearm by a convicted felon in violation of Code § 18.2-308.2.[2]

## II.

On appeal, Ross contends the trial court erred in not suppressing the evidence of his guilt discovered during the warrantless entry into his residence. In response, the Commonwealth

---

[2] Ross's juvenile adjudication finding him guilty of distributing cocaine served as the predicate offense under Code § 18.2-308.2(A)(iii) ("It shall be unlawful for . . . any person under the age of 29 who was adjudicated delinquent as a juvenile 14 years of age or older at the time of the offense of a delinquent act which would be a felony if committed by an adult . . . .").

argues the warrantless entry was justified under the emergency and community-caretaker exceptions to the warrant requirement.

### A. THE WARRANT REQUIREMENT & EXCEPTIONS

"Among the many interests served by the Fourth Amendment, the privacy interest in one's home has few equals." Kyer v. Commonwealth, 45 Va. App. 473, 480-81, 612 S.E.2d 213, 217 (2005) (*en banc*); see also Washington v. Commonwealth, 60 Va. App. 427, 436-37, 728 S.E.2d 521, 526 (2012). "At the very core of the Fourth Amendment stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." Kyllo v. United States, 533 U.S. 27, 31 (2001) (citation and internal quotation marks omitted). "It is axiomatic that the 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'" Welsh v. Wisconsin, 466 U.S. 740, 748 (1984) (citation omitted).

As a general rule, "searches and seizures inside a home without a warrant are presumptively unreasonable." Kentucky v. King, 131 S. Ct. 1849, 1856 (2011) (citation omitted). "But even on this topic the Fourth Amendment's text endorses no absolutes. It instead condemns only 'unreasonable' searches and seizures." Kyer, 45 Va. App. at 480, 612 S.E.2d at 217. The "presumption may be overcome in some circumstances" because the "warrant requirement is subject to certain reasonable exceptions." King, 131 S. Ct. at 1856.

"One well-recognized exception applies when 'the exigencies of the situation' make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." Washington, 60 Va. App. at 436, 728 S.E.2d at 526 (quoting King, 131 S. Ct. at 1856). Such exigencies often arise in one of two scenarios: (i) where the police have probable cause to enter or search a location or thing, but exigent circumstances excuse the need

to obtain a warrant, and (ii) where no probable cause exists, but a warrantless entry or search is justified because of an emergency.

In the first category, the exigent circumstance exception "necessarily embraces the separate, but closely related, question of probable cause." Smith v. Commonwealth, 56 Va. App. 592, 600, 696 S.E.2d 211, 215 (2010); see also Alexander v. Commonwealth, 19 Va. App. 671, 674, 454 S.E.2d 39, 41 (1995). In these cases, the police have probable cause to enter or search *and* exigent circumstances justify doing so without first obtaining a warrant. See, e.g., Verez v. Commonwealth, 230 Va. 405, 337 S.E.2d 749 (1985) (holding police had probable cause to believe a motel room contained drugs prior to the warrantless entry); Washington, 60 Va. App. at 437-38, 728 S.E.2d at 526-27 (finding probable cause and exigent circumstances to enter what appeared to be a recently burglarized residence).

In the second category, the exigency need not be directly related to suspected criminality. In such cases, the constitutional reasonableness standard "recognizes the 'right of the police to enter and investigate' when someone's health or physical safety is genuinely threatened," (the so-called emergency exception), and also takes into account that "police owe 'duties to the public, such as rendering aid to individuals in danger of physical harm, reducing the commission of crimes through patrol and other preventive measures, and providing services on an emergency basis,'" (often called the community-caretaker exception). Kyer, 45 Va. App. at 480-81, 612 S.E.2d at 217 (citation omitted); see also Knight v. Commonwealth, 61 Va. App. 297, 306-07, 734 S.E.2d 716, 720-21 (2012) (surveying the scope of the community-caretaker exception).[3]

_____

[3] The community-caretaker exception also extends to situations not involving any emergency conditions. See, e.g., Williams v. Commonwealth, 42 Va. App. 723, 731, 594 S.E.2d 305, 309 (2004) (recognizing that, "[u]nder the community caretaker exception, the police may conduct a warrantless inventory search of a vehicle").

In this case, the Commonwealth concedes the officers did not have probable cause to believe Ross may have committed (or was about to commit) a crime. Nor does the Commonwealth contend that Ross had hidden or destroyed (or was about to hide or destroy) incriminating evidence in his residence. On appeal, the Commonwealth relies solely on the emergency and community-caretaker exceptions to the warrant requirement.[4] We find neither applicable to this case.

## B. THE EMERGENCY EXCEPTION

The emergency exception recognizes "that the Fourth Amendment permits an officer to enter a residence if the officer has a reasonable basis for concluding that there is an imminent threat of violence." Ryburn v. Huff, 132 S. Ct. 987, 990 (2012) (*per curiam*). When this exception applies, the "need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." Id. (quoting Brigham City v. Stuart, 547 U.S. 398, 403 (2006)). Police officers understandably must respond, with or without a warrant, to any "imminent threat to their safety and to the safety of others." Id. at 991; see also Kyer, 45 Va. App. at 480-81, 612 S.E.2d at 217. It follows that "the police may seize any evidence that is in plain view during the course of their legitimate emergency activities." Mincey v. Arizona, 437 U.S. 385, 393 (1978).

---

[4] The Commonwealth does not argue that the search warrant would have justified the seizure of evidence from Ross's residence notwithstanding the allegedly tainted information gained during the initial warrantless entry. See Williams v. Commonwealth, 26 Va. App. 612, 619, 496 S.E.2d 113, 116 (1998); accord United States v. Moses, 540 F.3d 263, 271 (4th Cir. 2008); United States v. Payton, 573 F.3d 859, 861 (9th Cir. 2009); 6 Wayne R. LaFave, Search & Seizure § 11.4(f), at 429 (5th ed. 2012) (noting that when "some of the information in the affidavit presented to the warrant-issuing magistrate was acquired in a prior illegal search . . . courts have often answered by saying that the warrant is nonetheless valid if it could have issued upon the untainted information"); Ronald J. Bacigal, Criminal Procedure § 4:5, at 81 (2012-13 ed.) (noting that "'tainted' data [does not] invalidate the warrant when the affidavit's other averments set forth probable cause").

When determining whether the emergency exception applies, a court should not look at "each separate event in isolation" in support of the *faux* conclusion that "each, in itself, did not give cause for concern." Ryburn, 132 S. Ct. at 991. As is always the case, a court should examine the totality of the circumstances, for "it is a matter of common sense that a combination of events each of which is mundane when viewed in isolation may paint an alarming picture." Id. Under the Fourth Amendment, "reasonableness 'must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight,'" and the "calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments — in circumstances that are tense, uncertain, and rapidly evolving." Id. at 992 (quoting Graham v. Connor, 490 U.S. 386, 396-97 (1989)).

The Commonwealth contends the emergency exception applies to this case because of the "danger to anybody in the house *once* [the social worker] entered." Appellee's Br. at 7 (emphasis added). This justification, however, depends entirely on the assumption that the social worker in fact would have entered the residence and thereby triggered the emergency situation. We find nothing in the record to support this assumption. Ross did not want the social worker in his home and told him so. The JDR district court "home study" order did not authorize the social worker to enter Ross's residence against his will.[5] And nothing in the record suggests the social worker attempted to defy Ross and enter anyway. Other than asking for permission to enter and being turned down, the social worker made no effort to enter the residence. The police,

_____

[5] In this respect, the JDR district court "home study" order was unlike orders sometimes issued during child abuse investigations expressly authorizing nonconsensual entry. "In child-abuse investigations, a Family Court order is equivalent to a search warrant for Fourth Amendment purposes." Southerland v. City of New York, 680 F.3d 127, 144 n.15 (2d Cir. 2011) (citing Nicholson v. Scoppetta, 344 F.3d 154, 176 (2d Cir. 2003)); see also In re Albany Cnty. DSS v. Rossi, 62 A.D.3d 1049, 1050 (N.Y. App. Div. 2009) (noting "proof and procedure" for a DSS "court order of access" in New York is the "same as for a search warrant under the criminal procedure law"). We offer no opinion on the validity of such orders under Virginia law.

therefore, faced no emergency — much less one constituting an imminent threat to their safety or to the safety of others.

Perhaps this case would be different if the social worker had already entered the residence, if the social worker had some legal right to enter over Ross's refusal, if Ross had reluctantly invited him inside despite his animated misgivings, if Ross had threatened him in any way, or if Ross had said or done anything to suggest he intended to arm himself. Any of these circumstances, given Ross's reputation for violence, may very well have justified a warrantless entry by the police. But none of them were shown to exist in this case.[6]

## C. THE COMMUNITY-CARETAKER EXCEPTION

The Commonwealth also contends the community-caretaker doctrine applies because of the officers' duty to protect both the social worker and any of Ross's children within the residence. We again disagree.

As we have already concluded, the social worker did not need protection as he stood outside the residence, and nothing suggested he would have entered the residence contrary to Ross's wishes. As for Ross's children, the police had been told only that "there was a possibility there may be minor children in the residence." App. at 20. Cf. Williams v. Commonwealth, 49 Va. App. 439, 453, 642 S.E.2d 295, 301 (2007) (*en banc*) (finding a warrantless entry valid, for purposes of a protective sweep following an arrest, where "police officers did have information

---

[6] We reject Ross's assertion that the police attempted (albeit unsuccessfully) to create exigent circumstances that would excuse the need to obtain a search warrant. Whether they did or not is irrelevant. For Fourth Amendment purposes, the objective facts — not the subjective intent of the police — determines whether exigent circumstances exist. If the officers' actions were objectively reasonable, and they did not gain entry to the premises by an actual or threatened violation of the Fourth Amendment, it matters not that they "deliberately created the exigent circumstances with the bad faith intent to avoid the warrant requirement." King, 131 S. Ct. at 1859 (quoting and disapproving of Kentucky v. King, 302 S.W.3d 649 (Ky. 2010)). King supersedes our overly broad *dicta* in Crosby v. Commonwealth, 6 Va. App. 193, 201, 367 S.E.2d 730, 735 (1988) (stating "the police must not be responsible for creating their own exigencies").

indicating the presence of others inside the apartment"). But no evidence suggested a reasonable likelihood that children were in Ross's residence at the time the police entered. Nor did the circumstances imply that Ross intended to harm his children during this episode. While talking with the social worker, Ross made no threats concerning the children and said nothing to suggest he would put their safety at risk. It is possible, as the Commonwealth contends, that a child could become an unintended victim of violence if an altercation broke out between Ross and the DSS social worker either inside or outside the residence — but that scenario did not arise in this case, nor was there any imminent risk of it arising.

## III.

Because neither the emergency nor community-caretaker exceptions rebut the presumption that the warrantless entry into Ross's residence violated the Fourth Amendment, the trial court erred in denying Ross's motion to suppress. We thus reverse the trial court's order denying the motion to suppress, vacate the conviction, and remand for further proceedings consistent with this opinion.[7]

Reversed and remanded.

---

[7] Our holding does not forbid the Commonwealth, if it be so advised, from retrying Ross based upon evidence free of the taint of the unlawful entry into his residence. See United States v. MacDonald, 435 U.S. 850, 861 n.7 (1978) ("Dismissal of the indictment is the proper sanction . . . when the *only* evidence against him was seized in violation of the Fourth Amendment." (emphasis added)); see generally 1 LaFave, *supra* § 1.6(c), at 248. In addition to the firearms discovered in Ross's residence, the record contains photos of Ross holding what appears to be a firearm prior to the search. After the search, Ross made statements concerning those photos. Because the trial court denied the motion to suppress, the court did not address what the proper scope of a suppression order would be if one had been entered. We will not address this issue for the first time on appeal. "While the conclusions we have reached require us to reverse the [trial] court's ruling" that Ross's "constitutional rights were not violated, those conclusions do not determine the scope of the suppression order (if any) to be entered." United States v. Acosta-Colon, 157 F.3d 9, 21 (1st Cir. 1998) (citing United States v. Crews, 445 U.S. 463, 474 (1980)).