UNPUBLISHED

# COURT OF APPEALS OF VIRGINIA

Present:   Judges O'Brien, Malveaux and Senior Judge Clements
Argued at Richmond, Virginia

MELVIN YOVANY ARGUETA-DIAZ

v.        Record No. 1141-18-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE JEAN HARRISON CLEMENTS
NOVEMBER 5, 2019

FROM THE CIRCUIT COURT OF HENRICO COUNTY
Richard S. Wallerstein, Jr., Judge

Jesse Baez (Hairfield Morton PLC, on briefs), for appellant.

Robert H. Anderson, III, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.

Appellant was convicted in a bench trial of participating as an adult in a predicate

criminal act committed against a juvenile on school property for the benefit of, at the direction

of, or in association with any criminal street gang, in violation of Code §§ 18.2-46.2 and

18.2-46.3:3.[1]  He argues on appeal that the trial court erred in denying his motion to suppress,

admitting certain evidence, and finding the evidence sufficient to convict him.  We find no error

in the trial court's rulings and affirm his conviction.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Appellant was convicted in the same trial of assault and battery, in violation of Code
§ 18.2-57.  He did not challenge that conviction.

BACKGROUND

Consistent with familiar principles, we state the facts in the light most favorable to the Commonwealth, the party prevailing at trial. See Gerald v. Commonwealth, 295 Va. 469, 472-73 (2018). So viewed, the evidence established that in March 2017, John Marshall, an associate principal at Freeman High School in Henrico County, learned that appellant, a student at the school, had made drawings containing possible gang symbols. Detective Richter of the Henrico Police Department interviewed appellant, then age seventeen years, eight months, on March 17, 2017, in the principal's office at the school. A school resource officer, Henrico County Police Officer Rodriguez, participated in the interview as the Spanish translator for appellant. Marshall also was present. Richter was not investigating any particular crime. He told appellant that being in a gang was not illegal in the United States and asked if he was involved in a gang. Appellant said that he had been a member of MS-13 when he was a child living in Honduras and acknowledged that he was still an active member.

During the first week of school in September 2017, Marshall learned that appellant had made certain markings on his name tag and his hands that were consistent with symbols used by the MS-13 gang. Marshall and Officer Medina, a school resource officer, met with appellant on September 6, 2017. Medina observed the Roman numeral X on appellant's hands, as well as "the class marks for one, two, and three, and then double horns on his wrists." Medina saw an "X and the 3 for 13 and then LAS, ALCS"[2] on appellant's right ring finger. Appellant also wore a cap with a Chicago Bulls logo depicting horns, a symbol adopted by MS-13. Appellant was then eighteen years of age and in the tenth grade.

On September 14, 2017, at about 1:15 p.m., Assistant Principal Marshall and Officer Medina were standing by the cafeteria doors to supervise students as they entered and exited

_____

[2] "ALCS" is Alaska Los Criminales Salvatrucha, a clique of MS-13.

during the lunch hour when they saw appellant approach Danny Murillo Santos, who was in the ninth grade. Appellant "crowded [Santos'] space, had a frown on his face, and whispered something" to him. Marshall walked over to appellant and Santos to divert any confrontation. Santos tried to walk away, but appellant blocked his path. Appellant bumped Santos' shoulder with his chest at least twice. Medina grabbed appellant and took him to Marshall's office where Marshall questioned him about the incident. Appellant admitted that he had wanted to fight Santos because the latter had a symbol drawn on his hand that appellant believed "indicated something about the 18th Street Gang." Appellant also pointed to his own hand and said "dieciocho," Spanish for "eighteen." According to Medina, Santos was not a member of the 18th Street Gang.

Santos testified at trial that he had drawn a triangle on his hand before lunch on September 14, 2017, but that it had nothing to do with any gang affiliation. He further testified that appellant had confronted him as he was eating lunch and asked about the drawing. Although Santos said that he had just drawn it, appellant told him, "this is a warning," and grabbed him on the back of the neck. Then appellant chest bumped him two or three times as he tried to leave the cafeteria. Santos testified that appellant had asked him the day before whether he was a member of the 18th Street Gang and had threatened to kill him, his family, and his friends.

Appellant moved to suppress the statements he had made during the March 2017 interview with Detective Richter. The trial court heard appellant's motion to suppress immediately before the trial began and denied the motion. Appellant did not object to adopting Richter's testimony from the suppression hearing for use at trial. The court then found appellant guilty. This appeal followed.

ANALYSIS

I. Motion to Suppress

The denial of a motion to suppress evidence is reviewed on appeal in the light most favorable to the Commonwealth with the benefit of all reasonable inferences fairly deducible from that evidence accorded to the Commonwealth. See Payne v. Commonwealth, 65 Va. App. 194, 198 (2015), aff'd, 292 Va. 855 (2016). In considering whether to affirm the trial court's pretrial suppression ruling, this Court "reviews not only the evidence presented at the pretrial hearing but also the evidence later presented at trial." Hill v. Commonwealth, ___ Va. ___, ___ (Aug. 30, 2019) (quoting Commonwealth v. White, 293 Va. 411, 414 (2017)); see Ross v. Commonwealth, 61 Va. App. 752, 757 (2013). The appellant must show that the denial of the suppression motion was reversible error. See Sidney v. Commonwealth, 280 Va. 517, 522 (2010). The appellate court is bound by the circuit court's findings of fact unless "plainly wrong or without evidence to support them." Gregory v. Commonwealth, 64 Va. App. 87, 93 (2014). This Court gives deference to the trial court's findings of fact, but reviews *de novo* the trial court's application of the law to the particular facts of the case. Glenn v. Commonwealth, 275 Va. 123, 130 (2008).

Appellant argues that he was in police custody when Detective Richter questioned him about his possible gang involvement in March 2017 and thus should have been given Miranda[3] warnings. The record, however, establishes that Miranda warnings were not required because appellant was not in police custody during the interview.

Richter testified at the suppression hearing that he explained to appellant that he was investigating possible gang membership but that appellant was "not in trouble in any way, that it's not illegal to be a gang member and part of a gang unit." Richter was not in uniform but was

---

[3] See Miranda v. Arizona, 384 U.S. 436 (1966).

wearing his police badge; Officer Rodriguez, who was acting as a Spanish translator for appellant, was in uniform.  Neither Richter nor Rodriguez displayed a weapon.  Appellant never indicated that he did not wish to talk with the detective and appeared to understand the questions as translated by Rodriguez.  He was not placed under any physical restraints during the interview and was free to leave at any time.  Rodriguez estimated that the interview lasted about fifteen minutes.[4]

"[P]olice officers are not required to administer Miranda warnings to everyone whom they question."  Oregon v. Mathiason, 429 U.S. 492, 495 (1977).  Miranda warnings are not required unless an individual is "both in 'custody' and subjected to 'interrogation.'"  Blain v. Commonwealth, 7 Va. App. 10, 13 (1998).  In determining whether appellant was "in custody" when Richter questioned him, we consider whether his "freedom of movement" was restrained to "the degree associated with a formal arrest."  Brooks v. Commonwealth, 282 Va. 90, 96 (2011) (quoting California v. Beheler, 463 U.S. 1121, 1125 (1983)).  This assessment is "based on how a reasonable person in the suspect's situation would perceive his circumstances."  Yarborough v. Alvarado, 541 U.S. 652, 662 (2004).  "[T]he subjective perspective of either the suspect or the interrogating police officer has no bearing on the issue whether the suspect was 'in custody' at the time he was questioned by the police."  Dixon v. Commonwealth, 270 Va. 34, 40 (2005).

In evaluating whether an individual is in custody when questioned by the police, no single factor is dispositive.  See Wass v. Commonwealth, 5 Va. App. 27, 32 (1987).  Rather, "the totality of the circumstances must be considered."  Id.  Factors to be examined are

> (1) the manner in which the individual was summoned by the
> police, (2) the familiarity or neutrality of the surroundings, (3) the
> number of officers present, (4) the degree of physical restraint,
> (5) the duration and character of the interrogation, and (6) the

---

[4] Although Richter estimated that the interview lasted about sixty to ninety minutes, when the testimony of two police officers conflicts on some point, "the version more favorable to the Commonwealth" governs on appeal.  Eaton v. Commonwealth, 240 Va. 236, 249-50 (1990).

> extent to which the officers' beliefs concerning the potential culpability of the individual being questioned were manifested to the individual.

Harris v. Commonwealth, 27 Va. App. 554, 565 (1998). The fact that an investigation focuses upon an individual "is not determinative of the question of custody." Smith v. Commonwealth, 219 Va. 455, 470 (1978).

Consistent with the applicable law, the trial court properly held that appellant was not in custody when he met at his high school with his assistant principal and the two officers on March 17, 2017. First, the trial judge correctly noted that there was no evidence "as to the manner in which [appellant was] summoned by the police." Second, the interview took place at the school where appellant was a student, which the trial court considered a more "neutral surrounding" than the police station, and the only officer in uniform was a school resource officer whose function at the interview was to translate for appellant. Third, the trial court found as fact that "there was no physical restraint" and that Richter had explained to appellant "that he was not in trouble in any way, that it is not illegal to be a gang member in the United States." Fourth, the trial judge found that appellant had been sitting closest to the door and was positioned between Richter and Rodriquez. The trial judge implicitly credited Richter's testimony that he had not been investigating any particular crime, that no guns were drawn during the interview, and that appellant had been free to leave throughout the interview. The court also determined that at the time of the interview appellant was seventeen years, eight months old. Under these collective circumstances, the trial court correctly ruled that appellant was not in custody during the conversation on March 17, 2017.

Nothing in J.D.B. v. North Carolina, 564 U.S. 261 (2011), on which appellant relies, warrants a different result. There, a thirteen-year-old seventh grade student was taken from his classroom by a uniformed police officer, escorted to a closed-door conference room, and

questioned by police for at least thirty minutes. Id. at 265. The police had questioned him once before in connection with two burglaries and thefts occurring five days earlier. Id. The Supreme Court held that

> so long as the child's age was known to the officers at the time of police questioning, or would have been objectively apparent to a reasonable officer, its inclusion in the custody analysis is consistent with the objective nature of that test. This is not to say that a child's age will be determinative, or even a significant, factor in every case.

Id. at 277. The Court did not make a finding that the student was in custody and remanded the case for that determination. Id. at 281. Contrary to appellant's contention, the case does not stand for the proposition that Miranda warnings are always required when the police question a minor.

We note that appellant was not charged with any offense following the March 17, 2017 interview. Rather, he was prosecuted for assaulting Santos on September 14, 2017, which occurred almost six months after the interview. The Commonwealth made an additional argument before this Court that Miranda warnings were not required at the March 17, 2017 interview because appellant was not then subjected to interrogation within the meaning of Miranda. See Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980). We do not address that argument because we decide the case on the basis of custody.

## II. Admission into Evidence of Gang Members' Convictions

To convict appellant of violating Code § 18.2-46.2, the Commonwealth had to prove that he "actively participate[d] in or [was] a member of a criminal street gang." Code § 18.2-46.2(A). Establishing the existence of a "criminal street gang" requires proof that gang "members individually or collectively have engaged in the commission of, attempt to commit, conspiracy to commit, or solicitation of two or more predicate criminal acts, at least one of which is an act of violence, provided such acts were not part of a common act or transaction." Code § 18.2-46.1.

- 7 -

A "predicate criminal act" includes specified Virginia statutes and "any substantially similar offense under the laws of another state or territory of the United States, the District of Columbia, or the United States." Id.

To this end, Detective Richter testified that Michael Arevalo had been documented in May 2011 as a MS-13 gang member and currently was incarcerated on federal convictions for conspiracy to commit murder in aid of racketeering and use of a firearm. Arevalo had committed the crimes in July 2011. Richter also testified that Justyn Amador had been prosecuted in federal court for an offense committed in January 2012 that "involved . . . a MS-13 murder, where they murdered a fellow gang member within the same clique, that they believed was providing information to the police."

At trial, appellant challenged the evidence about Arevalo's conviction on the ground that Richter had been on the Gang Task Force for only two years and had not "personally" worked on the case resulting in Arevalo's conviction. Appellant argued that the evidence regarding Amador's conviction did not meet the definition of "criminal street gang" under Code § 18.2-46.1 because his conviction was the "same event" as Arevalo's conviction. Appellant argues on appeal that the trial court erred in allowing evidence about Arevalo's and Amador's federal convictions.[5] We disagree.

---

[5] Appellant makes arguments on appeal that he did not make at trial. He contends that the trial court should have excluded the testimony under Virginia Rule of Evidence 2:703 because Richter did not base his expert opinion on "facts personally known or observed by" him. He also asserts that Richter's testimony should have been excluded because it did not demonstrate that any acts by Arevalo or Amador were done as MS-13 gang members. These arguments are barred by Rule 5A:18 because they were not made at trial. The Rule provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause or to enable the Court of Appeals to attain the ends of justice." "Specificity and timeliness undergird the contemporaneous-objection rule, animate its highly practical purpose, and allow the rule to resonate with simplicity: 'Not just any objection will do. It must be both *specific* and *timely* — so that the trial judge would know the particular point being made in time to do something about it.'" Bethea v. Commonwealth, ___ Va. ___, ___ (Aug. 28, 2019) (quoting Dickerson v.

"'[T]he admissibility of evidence is within the discretion of the trial court' and an appellate court will not reject the decision of the trial court unless it finds an abuse of discretion." Hicks v. Commonwealth, 60 Va. App. 237, 244-45 (2012) (quoting Midkiff v. Commonwealth, 280 Va. 216, 219 (2010)). "Under this deferential standard, a 'trial judge's ruling will not be reversed simply because an appellate court disagrees;' only in those cases where 'reasonable jurists could not differ' has an abuse of discretion occurred." Campos v. Commonwealth, 67 Va. App. 690, 702 (2017) (quoting Thomas v. Commonwealth, 44 Va. App. 741, 753, adopted upon reh'g en banc, 45 Va. App. 811 (2005)).

Code § 18.2-46.1 does not require that Richter had been personally involved in Arevalo's prosecution. A "predicate criminal act" may be "any substantially similar" federal offense or one committed "under the laws of another state or territory of the United States, the District of Columbia, or the United States." Code § 18.2-46.1. That language "demonstrates a clear legislative intent to include within the sweep of the statute predicate crimes committed by gang members anywhere within the United States." Rushing v. Commonwealth, 284 Va. 270, 279 (2012). Requiring a local law enforcement officer to have personal involvement in the investigation or prosecution of any crime committed anywhere in order to testify that the offense was a "predicate criminal act" would violate legislative intent, as well as defy reason and logic.

---

Commonwealth, 58 Va. App. 351, 356 (2011)); see also Floyd v. Commonwealth, 219 Va. 575, 584 (1978) (holding that the appellate court will not consider an argument that differs from the specific argument presented to the trial court, even if it relates to the same general issue). Thus, appellant's arguments are waived.

Additionally, appellant made separate arguments at trial regarding the admissibility of Arevalo's and Amador's convictions. On appeal, however, in arguing that the trial court erred in allowing the evidence, appellant applies the rationale for his separate objections to both Arevalo and Amador. While his separate objections are preserved, they may not be attributed jointly on appeal. Cf. Linnon v. Commonwealth, 287 Va. 92, 102 (2014) (holding that objection made by one defendant in a joint trial could not be imputed to co-defendant absent an express joint objection). Accordingly, appellant has waived any argument except the specific objections that he made at trial for each predicate conviction. See id.

Richter's familiarity with MS-13 gang members in the Richmond area and knowledge of Arevalo's conviction satisfied the statute. See Salcedo v. Commonwealth, 58 Va. App. 525, 538 n.13 (2011) (noting that the two gang members whose "predicate criminal acts" were used to prove the existence of the Latin Kings gang were "a founding member of the Latin Kings on the East Coast" and "the Supreme Inca for the Latin Kings of New York").

Further, Arevalo was convicted of two offenses committed on July 24, 2011, while Amador was convicted of an offense committed on January 14, 2012. Although they had a common co-defendant (Jose Bran), Arevalo and Amador were not co-defendants in their separate crimes, which occurred almost six months apart. Their offenses reasonably cannot be characterized as "part of a common act or transaction."

The Supreme Court also held in Rushing that a detective's expert opinion that a second man was a member of a criminal street gang when he committed his crime was inadmissible because it was based only on the detective's once having seen the man wearing black and blue beads, which the detective believed signified his gang membership. Rushing, 284 Va. at 278. The Court held that this opinion "was insufficiently grounded on facts in evidence to carry the Commonwealth's burden of proving one of the two requisite predicate crimes by gang members." Id. at 279. And, because the detective's observation of the man's beads was "not related in time" to his commission of his crime, it did not show that he had committed it as a gang member. Id. at 278. Appellant thus argues that Rushing supports his argument, but the case is distinguished on its facts.

Here, Richter's testimony and the federal conviction orders sufficiently established that both Arevalo and Amador were MS-13 gang members and had committed the requisite criminal acts. Therefore, the trial court did not abuse its discretion in admitting the evidence to prove the existence of a "criminal street gang."

III.  Admission into Evidence of Appellant's Drawings and Photographs

At trial, the Commonwealth presented seven exhibits to establish that appellant was a member of a criminal street gang.  Exhibits 1 and 2 were drawings that appellant had done in March 2017.  Exhibits 3 and 4 were photographs of appellant's hand on which he had drawn two "devil horns," "XIII," and "ACLS."  The photographs were taken on September 6, 2017, and Exhibit 3 also showed that appellant was wearing a "grim reaper" shirt.  Exhibit 5 was a photograph of the Chicago Bulls cap appellant had worn on September 6, and Exhibit 6 was a name tag on which appellant had drawn "devil horns."  Exhibit 10 was a photograph of two blue bandanas, which were found in appellant's jail cell on September 23, 2017.

The Commonwealth introduced Exhibits 1, 2, 3, 4, 5, and 6 through the testimony of Associate Principal Marshall.  Appellant objected that Exhibits 3, 4, 5, and 6 were not relevant because no foundation had been laid to connect the items to his charges.  When the trial court asked the prosecutor to explain the relevance of the name tag, she said that the purpose of the evidence was to prove that appellant was a gang member and that its significance would be established by later expert testimony on criminal street gangs.  The trial court overruled appellant's objections.

Detective Richter subsequently testified as an expert on criminal street gang activity and gang culture, particularly the MS-13 gang.  He described the origins of MS-13 in El Salvador and its later emergence in the United States.  He explained that some MS-13 gang members are devil worshippers, "so you might see . . . anything with a horn, Chicago Bulls jersey shirt, or drawn devil horns."  Richter stated that the drawings on appellant's hands and his name tag, his "grim reaper" shirt, and his Chicago Bulls cap, which were depicted in Exhibits 3, 4, 5, and 6, all contained items consistent with MS-13 gang membership.  Appellant did not object to the

detective's testimony, nor did he renew his earlier objections to the exhibits when Richter testified.

We hold that the trial court properly exercised its discretion in admitting Exhibits 3, 4, 5, and 6. See Huguely v. Commonwealth, 63 Va. App. 92, 115 n.12 (2014) (trial court has substantial discretion as to order of witnesses and manner of examination). Richter's testimony connected the exhibits to appellant's charges and sufficed to authorize their admission into evidence.

Additionally, even assuming the trial court's ruling was error, the error was harmless. "A non-constitutional error is harmless if it plainly appears from the record that the parties had 'a fair trial on the merits and substantial justice has been reached.'" Angel v. Commonwealth, 281 Va. 248, 268 (2011) (quoting Code § 8.01-678). The potential effect of the error must be considered in light of the entire record. See Commonwealth v. Proffitt, 292 Va. 626, 642 (2016). Where "the error did not have a substantial effect on the verdict," the error is harmless. Angel, 281 Va. at 268.

Appellant did not object to admitting Exhibits 1 and 2. Richter testified, without objection, that Exhibit 1 contained various indicia of MS-13 gang membership. He identified several items on appellant's drawing as

> [c]onsistent with MS-13 gang membership. The upper left corner of the drawings, there is the double horn . . . , there's Roman numeral 13, X and then three ones. It's got MS written under the double horns, 504 which is the country of Honduras . . . which Mr. Argueta-Diaz is from . . . . ACLS, which is Alaska Los Criminales Salvatrucha, which is a clique of MS-13. There is 13, obviously a Mexican Mafia 13. We have the upside-down cross, which is a Satanic idea towards MS-13, and then there's actually a hand-drawn . . . picture of a hand . . . where the index and pinkie fingers are extended straight upwards and out as much as possible and the two middle fingers are held downwards.

Richter also said that the two blue bandanas shown in Exhibit 10 were "consistent with MS-13 gang membership." Thus, any possible error was harmless because we can conclude "with fair assurance," that admitting Exhibits 3, 4, 5, and 6 did not affect or had only "slight effect" on the court's verdict. Clay v. Commonwealth, 262 Va. 253, 259-60 (2001) (quoting Kotteakos v. United States, 328 U.S. 750, 764-65 (1946)).

## IV. Sufficiency of the Evidence

Appellant argues that the evidence did not prove that he was a gang member or that his assault on Santos was done for the benefit of, at the direction of, or in association with a street gang. "In general, when reviewing a challenge to the sufficiency of the evidence to support a conviction, an appellate court considers the evidence in the light most favorable to the Commonwealth, the prevailing party below, and reverses the judgment of the trial court only when its decision is plainly wrong or without evidence to support it." Marshall v. Commonwealth, 69 Va. App. 648, 652-53 (2019). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" Chavez v. Commonwealth, 69 Va. App. 149, 161 (2018) (quoting Banks v. Commonwealth, 67 Va. App. 273, 288 (2017)).

Appellant maintains that the evidence did not prove that he was a member of MS-13 because he testified at trial that he was not a member of MS-13. However, the trial judge, sitting as the trier of fact, did not have to accept this assertion, and did not, crediting, instead, Richter's testimony that appellant had admitted to him that he was "still an active member" of MS-13. "It is the prerogative of the trier of fact 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" Sierra v. Commonwealth, 59 Va. App. 770, 776 (2012) (quoting Brown v. Commonwealth, 56 Va. App. 178, 185 (2010)).

The fact finder's conclusions regarding "credibility issues . . . will not be disturbed on appeal unless plainly wrong." Towler v. Commonwealth, 59 Va. App. 284, 291 (2011) (quoting Corvin v. Commonwealth, 13 Va. App. 296, 299 (1991)).

Additionally, appellant asserts that he was not a gang member because his actions against Santos on September 14, 2017, did not follow the "cardinal rule" testified to by Richter that once an MS-13 gang member confirms that a person is a member of a rival gang, such as the 18th Street Gang, he must immediately attack the rival member. However, the fact that appellant did not brutally attack Santos in the high school cafeteria, with an assistant principal and a school resource officer nearby, does not disprove appellant's gang membership. The record indicates that appellant was unable to "confirm" Santos' membership in the 18th Street Gang. Appellant testified that he did not think that Santos belonged to a rival gang. Santos testified that he told appellant that he was not a member of the 18th Street Gang and that the drawing on his hand had nothing to do with that gang. Officer Medina testified that Santos was not a member of the 18th Street Gang. And, as the trial court noted, even if appellant had been under a gang imperative to attack Santos, he may have declined to do so because he was not "a great follower of rules." Yet, appellant did assault Santos on September 14, 2017, and his assault and battery conviction is unchallenged on appeal.

The trial judge expressly found as fact that appellant was a member of MS-13. The court relied, in part, on the various exhibits introduced by the Commonwealth and Richter's expert testimony linking them to MS-13 membership. This finding was not plainly wrong or lacking in supporting evidence. See Hamilton v. Commonwealth, 279 Va. 94, 109 (2010) (holding that evidence that defendant wore red and black clothing, colors associated with the Bloods gang, was proof of his membership in the "Nine Trey Bloods" gang); see also Salcedo, 58 Va. App. at 525 (holding that the testimony of an expert in criminal street gangs regarding the identifying

colors, symbols, and particular hand signs associated with a certain group established that they were a criminal street gang as defined in Code § 18.2-46.1).

Finally, we find unpersuasive appellant's contention that the assault and battery was not shown to be for the benefit of, at the direction of, or in association with the MS-13 gang. The trial judge found as fact that appellant "admitted that he wanted to fight [Santos] because he had something to do with the 18th Street gang." Further, appellant had referred to the drawing on Santos' hand with the Spanish word for 18. Given all of the trial judge's factual findings, he reasonably concluded that appellant's assault on Santos was done in association with a street gang. See Morris v. Commonwealth, 58 Va. App. 744, 749-52 (2011) (holding that the trial court's finding that defendant acted "in association with" a criminal street gang when he participated in a random attack on three persons was not "plainly wrong or unsupported by the evidence").

CONCLUSION

We hold that the trial court did not err in denying the motion to suppress, admitting the convictions of two MS-13 gang members, admitting evidence that established appellant was a member of MS-13, and finding the evidence sufficient to convict appellant of violating Code §§ 18.2-46.2 and 18.2-46.3:3. We affirm appellant's conviction.

Affirmed.