COURT OF APPEALS OF VIRGINIA

Present:  Judges Fulton, Lorish and White
Argued at Norfolk, Virginia


ANDRE MARQUISE HARRIS

MEMORANDUM OPINION* BY
v.      Record No. 1438-23-1      JUDGE JUNIUS P. FULTON, III
SEPTEMBER 3, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Christopher R. Papile, Judge

(Joshua A. Goff; Goff Voltin, PLLC, on brief), for appellant.
Appellant submitting on brief.

Rosemary V. Bourne, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a bench trial, Andre Marquise Harris was convicted of possession of cocaine, in

violation of Code § 18.2-250, possession of a firearm with drugs, in violation of Code § 18.2-308.4,

and possession of a firearm by a convicted felon, in violation of Code § 18.2-308.2.  Harris was

sentenced to 15 years of incarceration, with 10 years suspended.  On appeal, Harris asserts that the

trial court erred in denying his motion to suppress.  For the following reasons, we affirm.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

## I.  BACKGROUND[1]

On October 12, 2022, Newport News Police Officers Cameron, Polk, and Williams responded to a 911 call for a domestic dispute at 521 22nd Street.[2]  The officers approached the door of the home and, before knocking, heard a "verbal and physical altercation . . . a scuffle" and a female screaming.  After knocking and announcing, "Newport News Police . . . open the door," Officer Cameron heard a woman, later identified as Taylor Evron, say "that's the police," and repeatedly shout "he's pulling my hair, come in, he's pulling my hair, open the door."[3]  Officer Cameron knocked several more times, and Harris eventually opened the door only to try and close it as soon as he saw the officers.  Before the officers pushed their way inside, Officer Cameron observed that Harris had blood on his lip from a possible cut and that when Harris turned away from the officers, his hands immediately went to his "waistband area."  Based on his training and experience, Officer Cameron knew this was a "common place to keep guns" and attempted to control Harris's hands from reaching for anything.  The officers grabbed Harris and pushed him against the wall, with Officer Williams holding Harris's left arm and Officer Cameron holding Harris's right arm.  At this time, Evron began reaching into Harris's pants, and Officer Polk was directed to take her outside so Officers Williams and Cameron could subdue Harris.  The officers eventually handcuffed Harris and walked him outside where he was arrested for domestic assault and searched.  During the search of his person, the officers found crack

---

[1] "In reviewing a trial court's denial of a motion to suppress, 'we determine whether the accused has met his burden to show that the trial court's ruling, when the evidence is viewed in the light most favorable to the Commonwealth, was reversible error.'"  *Cantrell v. Commonwealth*, 65 Va. App. 53, 56 (2015) (quoting *Roberts v. Commonwealth*, 55 Va. App. 146, 150 (2009)).

[2] The officers were dispatched based on an open line call to 911 from the residence during which the dispatcher could hear what sounded like two people arguing.

[3] At trial, Officer Polk testified that he heard Evron say "open my door" repeatedly.

cocaine and a gun. A subsequent search of the home revealed that the only other people in the home were a four- or five-year-old child and an infant.

Prior to trial, Harris filed a motion to suppress arguing that the search violated his Fourth Amendment rights specifically because officers did not obtain valid consent to enter the residence and their actions did not fall under the "community caretaker" exception. After hearing argument, the trial court issued a letter opinion denying the motion and finding that, notwithstanding Harris's reliance on the inapplicability of the community caretaker exception, the "emergency aid" exception applied because officers were responding to a 911 call involving "a possibly violent situation" and upon arrival heard "continuous yelling between a male and a female, much of which involved the female demanding him to stop pulling her hair." Further, when the door was opened, the officers observed Harris "sweating" and "evidence of injury" to Harris. The trial court noted that it was unsure whether "the female's demands to 'open my door'" were directed to the officers but found it reasonable for them to believe so and consequently supported the officers' reasonable belief that an emergency required their aid.

At trial, Harris presented no evidence or argument. The trial court subsequently convicted Harris of one count of possession of cocaine, one count of possession of a firearm with drugs, and one count of possession of a firearm by a convicted felon and sentenced him to 15 years' incarceration with 10 years suspended. Harris appeals.

II. ANALYSIS

Harris assigns error to the trial court's denial of his motion to suppress the evidence discovered on his person during his arrest, asserting that the officers' entry into Evron's home was not justified because there were no exigent circumstances and the "community caretaker"

exception to the Fourth Amendment did not apply.[4]  While generally challenging the warrantless search of his person, Harris does not raise a specific challenge to the subsequent search of his person after his removal from the home and detention for suspected domestic assault, only that the initial entry to Evron's home was a violation of his Fourth Amendment rights and, therefore, that the evidence recovered from his person should be suppressed.

## A.  Standard of Review

"[A] defendant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that we review *de novo* on appeal."  *King v. Commonwealth*, 49 Va. App. 717, 721 (2007).  On appeal, we are "bound by the trial court's findings of historical fact unless 'plainly wrong' or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers."  *Cantrell v. Commonwealth*, 65 Va. App. 53, 56 (2015) (quoting *McGee v. Commonwealth*, 25 Va. App. 193, 198 (1997) (en banc)).  "However, we consider *de novo* whether those facts implicate the Fourth Amendment and, if so, whether the officers unlawfully infringed upon an area protected by the Fourth Amendment."  *Id.* (quoting *Hughes v. Commonwealth*, 31 Va. App. 447, 454 (2000) (en banc)).

## B.  Initial Entry into Evron's Home[5]

It is well-established that under the Fourth Amendment, "[s]earches and seizures conducted without a warrant are presumptively invalid."  *Id.* at 59.  However, this "'presumption

---

[4] Harris has potentially defaulted on the emergency aid ruling as he never objected to the trial court's application of the emergency aid exception as the basis for its decision.  We assume without deciding that he took exception to the trial court's reliance on this basis despite focusing the majority of his argument on appeal on the applicability of the "community caretaker" exception to the Fourth Amendment.

[5] Though Harris lived with Evron at the time of the incident, his name was not on the lease for the residence.

may be overcome in some circumstances' because the 'warrant requirement is subject to certain reasonable exceptions.'" *Ross v. Commonwealth*, 61 Va. App. 752, 759 (2013) (quoting *Kentucky v. King*, 563 U.S. 452, 459 (2011)); *see also Kyer v. Commonwealth*, 45 Va. App. 473, 480 (2005) (en banc) (recognizing that the Fourth Amendment "condemns only 'unreasonable' searches and seizures"). "One concession to reasonableness" is the emergency aid exception to the warrant requirement, which "recognizes the 'right of the police to enter and investigate' when someone's health or physical safety is genuinely threatened." *Kyer*, 45 Va. App. at 480. The exception "rests on the commonsense rationale that 'preservation of human life is paramount to the right of privacy.'" *Id.*; *see also Brigham City v. Utah*, 547 U.S. 398, 403 (2006) ("The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency." (quoting *Mincey v. Arizona*, 437 U.S. 385, 393 (1978))). The emergency aid exception also "takes into account that 'police owe duties to the public, such as rendering aid to individuals in danger of physical harm, reducing the commission of crimes through patrol and other preventative measures, and providing services on an emergency basis.'" *Ross*, 61 Va. App. at 760 (quoting *Kyer*, 45 Va. App. at 480).

Under the emergency aid exception, "law enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury." *Brigham City*, 547 U.S. at 403; *see also Merid v. Commonwealth*, 72 Va. App. 104, 117 (2020) (holding that the emergency aid exception justified entry into the home where the defendant's brother told officers he was concerned that the defendant was going to commit suicide and where they heard alarming sounds from inside the home). This type of exigency permits entry if the officers have "'an objectively reasonable basis for believing' that 'a person within [the house] is in need of immediate aid.'" *Michigan v. Fisher*, 558 U.S. 45, 47

(2009) (per curiam) (alteration in original) (quoting *Brigham City*, 547 U.S. at 406; *Mincey*, 437 U.S. at 392).

Based on the totality of the circumstances here, officers had an objectively reasonable belief that a person was in need of immediate aid within Evron's home. The officers were responding to what they believed was a domestic dispute because someone in the home had placed a call to 911 and the dispatcher could hear people arguing. When officers arrived at Evron's home, they heard "screaming" and "somewhat of a scuffle." After the officers announced their presence and demanded that the door be opened, they heard the woman inside the home acknowledge their presence by saying "that's police" and shouting "he's pulling my hair, come in, he's pulling my hair, open the door, open my door." Once Harris opened the door, the officers observed blood on his lip indicating that they had indeed interrupted a physical altercation and that he or someone else in the home may be in need of emergency aid. Accordingly, we hold that the officers' entry into Evron's home was justified under the emergency aid exception to the Fourth Amendment.

### B. Search of Harris's Person

In order to effectuate the guarantees of the Fourth Amendment, the Supreme Court established the "exclusionary rule," preventing evidence obtained in violation of the Fourth Amendment from being used against an accused. *Commonwealth v. Ealy*, 12 Va. App. 744, 750 (1991) (citing *Reynolds v. Commonwealth*, 9 Va. App. 430, 435 (1990)). "The exclusionary rule operates not only against evidence seized and information acquired during an unlawful search or seizure but also against derivative evidence discovered because of the unlawful act." *Warlick v. Commonwealth*, 215 Va. 263, 265 (1974) (citing *Silverthorne Lumber Co. v. United States*, 251 U.S. 385 (1920).

On appeal, Harris argues that the search of his person while detained by police was improper, because the officers unlawfully entered Evron's home in violation of the Fourth Amendment, and therefore, any evidence seized as a result of that entry and his detention on suspicion of domestic assault was inadmissible. Based on our holding that the officers' entry into Evron's home was justified under the emergency aid exception to the Fourth Amendment, we find that Harris has waived any challenge to the warrantless search of his person when officers detained him on suspicion of domestic assault.

### III.  CONCLUSION

The trial court did not err in denying Harris's motion to suppress evidence as the officers' entry into Evron's house was lawful under the emergency aid exception to the Fourth Amendment.

*Affirmed.*